EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* AGAPITO VALENTÍN SANTANA, acusado y apelante.

*Número:* CR-63-55      *Resuelto:* 21 de octubre de 1963

*Víctor Velasco Gordils,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* e *Irene Curbelo, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal. .

El apelante fue acusado por un delito de hurto mayor (subsiguiente) consistente en que sustrajo ilegalmente de la residencia de los esposos Santoni una sortija de diamantes valorada en $1,000.00 perteneciente a la señora Haydeé García de Santoni. El juicio comenzó a celebrarse ante un jurado pero a solicitud del acusado continuó por tribunal de derecho. Practicada la prueba de cargo y no habiendo el acusado presentado prueba de defensa el Tribunal le declaró culpable del delito imputádole y le impuso una pena de 10 a 14 años de presidio con trabajos forzados.

En este recurso señala la comisión de tres errores, el primero de los cuales lo enuncia así: "El Tribunal probó el grado del delito de hurto al cualificar a la perjudicada para que declarara que la sortija hurtada valía más de $100 dólares."

Este señalamiento está predicado en ciertas preguntas que hizo el juez a la testigo Haydeé García de Santoni. A preguntas del Fiscal dicha testigo había declarado que la sortija hurtada, que era de oro blanco y tenía nueve brillantes, le había costado a su esposo $500.00, veinticinco años atrás. En la repregunta manifestó que ese hecho le constaba por información, y por consiguiente, se ordenó su eliminación. En el examen redirecto el fiscal le preguntó sobre el valor que ella calculaba tenía la sortija. Se opuso la defensa y entonces

intervino el juez diciendo que debía cualificarse a la testigo un poco más e inmediatamente le hizo algunas preguntas al efecto de si ella había comprado otras sortijas de brillantes y si había presenciado transacciones con esa clase de prendas y al contestar en la afirmativa, le preguntó sobre el valor de la sortija hurtada contestando la testigo que no tenía dudas de que su valor era de $700.00.

En realidad ésta no es la intervención indebida de un magistrado que condenamos en *Pueblo* v. *Aletriz*, 85 D.P.R. 646 (1962) y en otros casos más.

Tampoco puede afirmarse que el juez probó con sus preguntas el valor de la referida prenda pues independientemente del testimonio de la señora Santoni, en el récord hay prueba del valor mismo. El detective Angel Luis Sánchez Vega declaró, sin objeción de la defensa, que la señora Santoni le había informado que la sortija de brillantes desaparecida estaba valorada en $1,000.00. De todos modos las preguntas del juez iban dirigidas a aclarar la cuestión dudosa de si la señora Santoni tenía o no conocimientos sobre el valor de sortijas de brillantes. Más bien es aplicable a esta situación la doctrina establecida en el caso de *Pueblo* v. *Vázquez Colón*, 87 D.P.R. 734, (1963).

El primer error no fue cometido, ni tampoco el segundo. Por este último se sostiene que el "Tribunal admitió como voluntaria una confesión oral del acusado que efectiva y realmente era inadmisible por involuntaria".

Dos cuestiones suscita el apelante en la discusión de este segundo error. Alega en primer término, que el acto de conducirlo al cuartel de la policía constituyó un arresto y que siendo ese un arresto ilegal, debió suprimirse la prueba relacionada con la confesión oral del acusado prestada en el cuartel en presencia de los detectives Sánchez, Green y Tapia. En segundo término sostiene que dicha confesión era inadmisible por ser involuntaria.

Precisa, en estos momentos, hacer un breve resumen de los hechos.

Para el día 7 de diciembre de 1960 hacía un mes que el acusado trabajaba como jardinero y en otras labores para los esposos Santoni. Ese día se desapareció de la residencia de los señores Santoni una sortija de brillantes. Notificada la policía, se personó ese mismo día en la referida residencia el detective Angel Luis Sánchez para realizar la investigación correspondiente. Inquirió entre otras cosas, sobre las personas que allí trabajaban. Regresó al otro día como a las once de la mañana y encontró en la residencia de los señores Santoni al acusado. Le condujo al cuartel de la policía para interrogarle. Al principio el acusado negó toda participación en el hurto. Se le sirvió alimentos a la hora de almuerzo. Al preguntarle el detective Sánchez, quien fue el único que lo interrogó aunque estaban presentes otros dos detectives, si tenía antecedentes penales, contestó en la negativa. Dicho detective lo confrontó entonces con su expediente penal y en ese momento el acusado confesó que había tomado la prenda y la había empeñado a un tal Juan Avilés. El acusado accedió a ayudar a localizar la sortija y acompañado de los detectives se dirigió al barrio La Perla, donde después de hablar con Juan Avilés, la prenda fue recuperada. Luego se dirigieron a la casa de la señora Santoni para que ésta la identificara. Allí el acusado volvió a admitir la comisión del delito. La noche de ese día fue ingresado en la cárcel luego de un magistrado haber determinado causa probable.

El día 14 de diciembre de 1960 y en las oficinas del Fiscal Roberto de Jesús, el acusado confesó por escrito la comisión del delito.

Para la fecha de la desaparición de la prenda, había dos personas que por las labores que realizaban y su presencia en la residencia de los esposos Santoni, o podían tener conocimiento de algún hecho material relacionado con el hurto o podían ser sospechosos. Estas personas eran la sirvienta de los

señores Santoni y el acusado apelante. Parece lógico que en la investigación practicada se interrogara a ambas personas.

■ El interrogatorio del acusado se llevó a efecto en el cuartel de la policía. Suponiendo que el acusado se encontraba entonces detenido y que esa detención era ilegal, según él alega, tal circunstancia, por sí sola, es insuficiente para tachar de involuntaria su confesión oral, y en su consecuencia, inadmisible en evidencia. *Pueblo* v. *Fournier*, 77 D.P.R. 222 (1954); *Pueblo* v. *Martínez Figueroa*, 86 D.P.R. 413 (1962). "El punto decisivo", según dijimos a la pág. 256, en el primero de estos casos al rechazar la regla *McNabb*, "es la voluntariedad de la confesión y no la ilegalidad de la detención."

■ El acusado sostiene además que la confesión oral hecha en el cuartel de la policía fue obtenida mediante coacción física y psicológica.

En cuanto a la coacción física la prueba fue contradictoria pero el Juez resolvió el conflicto en contra del acusado. Al así hacerlo no abusó de su discreción. El acusado fue el único que declaró que los detectives lo golpearon con los puños y con un *"blackjack"*; que le dieron con el *"blackjack"* por el pecho y con los puños en la cara y el cerebro, produciéndole hinchazón de la cara. Sin embargo, la señora Santoni declaró que esa noche vio al acusado en su residencia y no le vio hinchazón alguna, ni señales de golpes. Lo volvió a ver más tarde esa misma noche en el cuartel y tampoco presentaba contusiones u otras lesiones en su rostro. El detective Sánchez afirmó que ni él ni los otros detectives hubieran agredido al acusado. Tampoco vio que presentara golpes en su cara. El Oficial de Récords de la cárcel "La Princesa", declaró que no aparecía del expediente que el acusado se hubiese querellado de algo al ser ingresado en la cárcel.

¿Fue obtenida la confesión oral en el cuartel mediante coacción psicológica? No. El acusado fue interrogado durante unas pocas horas, a lo sumo dos o tres. No se le negaron ali-

mentos ni fue interrogado por la detective utilizando el sistema de turno. No puede decirse que el acusado fuera "congelado" o "ablandado" por el tiempo que duró su detención. Se trata de un acusado con antecedentes penales, familiarizado ya con las investigaciones policíacas. No concurren aquí pues, "circunstancias opresivas contra la facultad de resistencia de la persona que confesó". *Pueblo* v. *Fournier*, 80 D.P.R. 390 (1958).

Ni siquiera la circunstancia de que el acusado fuera confrontado con su expediente penal, militaría en contra de la voluntariedad de la confesión oral. En el caso de *Martínez Figueroa*, supra, citamos el de *United States, ex rel. Caminito* v. *Murphy*, 222 F.2d 698, 701, donde se resolvió que "ni la detención ilegal por muchas horas ni el engaño al confrontar a Caminito con policías disfrazados . . . . serían suficientes para viciar las confesiones por haber sido obtenidas inconstitucionalmente". Tampoco se ha considerado involuntaria una confesión porque la misma se atribuya al hecho de que el acusado haya sido informado de declaraciones incriminatorias hechas por un supuesto cómplice. *Lisenba* v. *California*, 314 U.S. 219, 86 L.Ed. 166.

Al confrontarse al acusado en este caso con su expediente penal, después de haber negado que tenía tales antecedentes, en nada podía conturbar su espíritu, ni quebrar su voluntad para confesar el delito, pues si alguien tenía completo conocimiento de esos antecedentes, era el propio acusado.

En el caso de *Pueblo* v. *Meléndez*, 80 D.P.R. 787 (1958), apuntamos en un escolio que en algunas jurisdicciones norteamericanas, cuando hay razones para sospechar que se ha extraído la confesión al acusado por medios ilegítimos, se impone al juez la obligación de no admitir evidencia de la confesión hasta tanto hayan declarado todas las personas que participaron en el interrogatorio. En dicho caso no adoptamos esa regla, ni tenemos que decidir ahora, si debe o no regir

en Puerto Rico, pues en el caso de autos solamente un detective interrogó al acusado y ese detective declaró en el juicio.

Finalmente el acusado señala como último error la admisión en evidencia de la confesión escrita hecha ante el Fiscal seis días después de su arresto. El error es frívolo. La prueba establece que dicha confesión fue hecha voluntariamente. No medió amenazas ni promesas por parte del Fiscal. Todas las circunstancias demuestran que no existe la probabilidad de que dicha confesión sea el resultado de una influencia coercitiva anterior.

La contención del acusado, es sin embargo, que cuando hizo dicha confesión escrita, él estaba bajo acusación y era el testigo principal de defensa. Arguye, en su consecuencia, que el fiscal no podía entrevistar los testigos de defensa conforme dispone el Art. 11 del Código de Enjuiciamiento Criminal.

Para la fecha de la confesión escrita—14 de diciembre de 1960—todavía no se había formulado acusación contra el acusado. Estaba detenido porque un magistrado había encontrado causa probable en su contra. De todos modos la disposición del citado Art. 11 se refiere a los testigos del acusado y no al acusado mismo. *Pueblo* v. *Cruz Jiménez*, 87 D.P.R. 133 (1963), y *Pueblo* v. *Tribunal Superior*, 80 D.P.R. 702 (1958).

*Se confirmará la sentencia apelada.*