Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br>        Recurrido<br><br>            v.<br><br>Christian Nieves Vives<br>        Peticionario | Certiorari<br><br>2013 TSPR 19<br><br>188 DPR _____ |

Número del Caso: CC-2012-119

Fecha: 21 de febrero de 2013

Tribunal de Apelaciones:

                Región Judicial de Bayamón

Abogado de la Parte Peticionaria:

                Lcdo. Jesús Miranda Díaz

Oficina del Procurador General:

                Lcdo. Luis Román Negrón
                Procurador General

                Lcdo. Juan B. Ruiz Hernández

Materia: Procedimiento Criminal – Admisibilidad en evidencia de confesiones realizadas luego de un arresto sin orden y de practicadas las advertencias legales contra la autoincriminación.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

   Recurrido

      v.                     CC-2012-119    Certiorari

Christian Nieves Vives

   Peticionario


Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo


San Juan, Puerto Rico, a 21 de febrero de 2013.

Hoy tenemos la oportunidad de examinar nuestra normativa sobre la admisibilidad en evidencia de confesiones realizadas durante un procedimiento criminal. Mediante el presente caso, analizamos por primera vez y adoptamos los factores establecidos por el Tribunal Supremo de Estados Unidos en Brown v. Illinois, infra.[1]

En esencia, debemos resolver si una confesión, realizada luego de las advertencias

---

[1] En ocasiones anteriores, este Foro ha citado el mencionado caso de Brown v. Illinois, 422 U.S. 590 (1975). Véanse, Pueblo v. Millán Pacheco, 182 D.P.R. 595, 612 (2011); Pueblo v. González, 167 D.P.R. 350, 357 (Opinión disidente emitida por el Juez Presidente señor Hernández Denton, a la cual se unieron las Juezas Asociadas señora Fiol Matta y señora Rodríguez Rodríguez.); Pueblo v. Alcalá Fernández, 109 D.P.R. 326, 333 (1980). No obstante, esta es la primera vez que lo escudriñamos en detalle.

legales y de haberse cumplido con la protección constitucional a la no autoincriminación, es inadmisible en evidencia por ser producto de un arresto ilegal.

**I**

El 31 de agosto de 2011 el Ministerio Público presentó dos denuncias contra el peticionario Christian Nieves Vives (peticionario) por hechos ocurridos entre la noche del 21 y la madrugada del 22 de agosto del mismo año; una de estas fue por el delito de apropiación ilegal[2] y la otra por daño agravado.[3] En las mismas se imputó que el peticionario de manera ilegal, voluntaria, maliciosa, a sabiendas y con intención criminal se apropió de bienes pertenecientes al Sr. Afner Martínez López. Además, se le imputó haber ocasionado daños ascendentes a $5,879.30 a una excavadora propiedad del señor Martínez López. El Tribunal de Primera Instancia determinó causa probable para arresto por los delitos imputados y le impuso una fianza de $1,000. Sin embargo, en la vista preliminar se determinó causa probable para acusar al peticionario únicamente por el delito de daño agravado. Subsiguientemente, el 1 de octubre de 2011 el Ministerio Público presentó una acusación, según autorizada, contra el peticionario Nieves Vives.

---

[2] Art. 192 del Código Penal de Puerto Rico de 2004, 33 L.P.R.A. sec. 4820.

[3] Art. 208 del Código Penal de Puerto Rico de 2004, 33 L.P.R.A. sec. 4836.

Luego de la lectura de acusación, el 2 de noviembre de 2011, el peticionario presentó una moción de supresión de confesión en la que alegó, en síntesis, que la confesión obtenida fue ilegal por ser producto de un arresto ilegal, conforme a la doctrina del "fruto del árbol ponzoñoso".[4] Por su parte, el 7 de noviembre de 2011 el Ministerio Público presentó una oposición a la solicitud de supresión de confesión en la que sostuvo que el peticionario no se encontraba bajo arresto en la Comandancia en Bayamón (Comandancia) y que en la obtención de la confesión se cumplieron con todas las exigencias del debido proceso de ley.[5] Argumentó que la evidencia presentada en la vista preliminar claramente estableció las circunstancias particulares que dieron motivos fundados para investigar los hechos.

Así las cosas, el 9 de noviembre de 2011, el Tribunal de Primera Instancia celebró la vista de supresión de confesión. La prueba desfilada durante la vista consistió únicamente en el testimonio del agente Carlos Rodríguez Torres (agente). Su testimonio se basó en la forma y manera en que se obtuvo la confesión del peticionario. No obstante, y como muy bien fue señalado por la defensa, **el agente Rodríguez Torres no fue quien arrestó al peticionario, por lo que en la vista no pudo testificar sobre los detalles o motivos fundados para**

---

[4] Apéndice de la Petición de *certiorari*, págs. 27-36.

[5] Íd., págs. 37-43.

**realizar el arresto.** Más bien, el agente aceptó que el peticionario Nieves Vives estaba bajo custodia de la Policía de Puerto Rico (Policía) y que fue arrestado sin orden judicial.

Según surge de la exposición narrativa de la prueba, el agente Rodríguez Torres declaró que el 22 de agosto de 2011 se le asignó investigar un escalamiento ocurrido en el Club Metropolitano de Tiro, ubicado en la Urbanización Levittown de Toa Baja. Se alegó que dicho suceso ocurrió entre la noche del 21 y la madrugada del 22 de agosto de ese mismo año. El agente indicó que su supervisor le instruyó que acudiera a la Avenida del Lago, ya que se había recuperado cierta evidencia relacionada con el escalamiento.

Así las cosas, el agente Rodríguez Torres acudió al lugar indicado y conversó con el agente Sánchez de la División de Inteligencia. Este último le informó que se había ocupado un bulto con varios cartuchos de escopeta y otros utensilios que parecían estar relacionados con el escalamiento y un asesinato ocurrido en la playa del sector. El agente Rodríguez Torres declaró, además, que el agente Sánchez le informó que la Policía tenía en la Comandancia a tres personas detenidas vinculadas con la investigación del asesinato.

Ante esta situación, el agente Rodríguez Torres acudió a la Comandancia. Al llegar allí conversó con el agente Lara y este le confirmó que tenían a tres personas

detenidas las cuales se habían arrestado entre las cinco y media y seis de la tarde.[6] Las tres personas detenidas eran el peticionario Nieves Vives y dos personas más identificadas como Saúl y Julio. En ese momento el agente Rodríguez Torres se dirigió al peticionario. Este ya había sido interrogado por el agente Lara y el sargento Aponte con relación al asesinato y lo habían descartado como sospechoso, sin embargo, le indicaron que debía permanecer en un cubículo de la Comandancia en lo que llegaba el agente Rodríguez Torres para interrogarlo sobre el escalamiento.

Una vez el agente Lara y el sargento Aponte se retiraron, el agente Rodríguez Torres le leyó las advertencias legales al peticionario. El peticionario Nieves Vives comprendió las advertencias, marcó el documento al respecto y expresó su deseo de declarar.[7] Consecuentemente, el peticionario brindó una confesión relacionada con el delito de daño agravado. La entrevista entre el agente Rodríguez Torres y el peticionario Nieves Vives se produjo a las seis y media de la tarde.[8]

En esencia, el peticionario confesó al agente Rodríguez Torres que el día de los hechos se reunió con

---

[6] Transcripción de la vista de supresión, Apéndice de la Petición de *certiorari,* pág. 61.

[7] Es importante señalar que sobre las advertencias no hay controversia. Incluso, la defensa del peticionario Nieves Vives estipuló el documento y la realización de tales advertencias en la vista de supresión. Véase Transcripción de la vista de supresión, Apéndice de la Petición de *certiorari,* pág. 58.

[8] Íd., pág. 63.

Saúl y Julio en casa de este último y luego partieron a casa de Carlitos. Desde allí los cuatro salieron a la Carretera 165 hacía la antigua vaquería. En dicho lugar encontraron una máquina de cavar y le forzaron el encendedor. Al no poder prender la excavadora decidieron sacarle las baterías y se las llevaron. Posteriormente, partieron hacia el Club Metropolitano de Tiro (Club Metropolitano). Al llegar al Club Metropolitano entraron a los predios del local y trataron de romper las rejas de la estructura que allí se encuentra. Al no poder romper las rejas, arrancaron el portón de la entrada utilizando un vehículo de motor. Luego de arrancar el portón entraron a la estructura, abrieron los 18 "lockers" existentes y se llevaron mercancía tales como cartuchos, "trimmers" y "blowers". Mientras se disponían a salir del lugar, Carlitos gritó "agua" al ver a la Policía acercarse y corrió hacía un río. Por otro lado, Saúl, Julio y el peticionario se montaron en el vehículo de motor y se marcharon del Club Metropolitano. Posteriormente, Carlitos fue encontrado muerto en el área de una playa.

El agente declaró que luego de dicha confesión se presentaron los cargos contra el peticionario. Sin embargo, y como mencionáramos anteriormente, el agente no pudo declarar sobre cómo se llevó a cabo el arresto, ya que él no fue quien arrestó al peticionario y no tenía conocimiento sobre esos hechos.

Luego de escuchar el testimonio del agente Rodríguez Torres, el foro de instancia declaró "no ha lugar" a la supresión solicitada.  El 23 de noviembre de 2011 el tribunal emitió mediante resolución la determinación antedicha, notificada el 2 de diciembre e 2011.  En su resolución, el foro primario señaló que "el acusado no expone hecho o fundamento alguno sobre el modo y las circunstancias en que fue detenido originalmente".[9]

Inconforme con esa determinación, el 3 de enero de 2012, el peticionario Nieves Vives presentó ante el Tribunal de Apelaciones un recurso de *certiorari.*  En síntesis, arguyó que un arresto sin orden se presume ilegal y le corresponde al Ministerio Público rebatir dicha presunción.  El 19 de enero de 2012 el foro intermedio emitió una resolución en la que denegó la expedición del *certiorari.*  El tribunal apelativo le brindó deferencia a la determinación del foro de instancia en cuanto a la negativa de suprimir la confesión porque entendió que la misma fue realizada conforme a los parámetros legales.  Por otro lado, en cuanto a la detención, señaló que "no fue caprichosa, irrazonable ni errada; sino por el contrario fue producto de un proceso lícito".[10]

En desacuerdo con la decisión del Tribunal de Apelaciones, el peticionario Nieves Vives presentó un

---

[9] Apéndice de la Petición de *certiorari,* pág. 50.

[10] Íd., pág. 75.

recurso de *certiorari* ante esta Curia, en el que señaló los errores siguientes:

> **Erró el Honorable Tribunal de Apelaciones al confirmar al Tribunal de Primera Instancia a pesar de que en el presente caso no se rebatió la presunción de invalidez del arresto llevado a cabo.**
>
> **Erró el Honorable Tribunal de Apelaciones al confirmar al Tribunal de Primera Instancia quien validó un arresto sin orden a pesar de que hubo ausencia total de prueba sobre las circunstancias en que se llevó a cabo el arresto.**
>
> **Erró el Honorable Tribunal de Apelaciones al confirmar al Tribunal de Primera Instancia argumentando que se cumplió con las advertencias de *Miranda* y el debido proceso de ley para obtener la confesión del presente caso haciendo abstracción de que la misma fue consecuencia de una violación al Art. II Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico y IV Enmienda Federal.**

Expedido el recurso y con el beneficio de las comparecencias de ambas partes, resolvemos.

## II

La Cuarta Enmienda de la Constitución de Estados Unidos (Cuarta Enmienda) y el Art. II, Sec. 10 de la Constitución de Puerto Rico (Art. II, Sec. 10) protegen el derecho del pueblo contra registros, incautaciones y allanamientos irrazonables. La disposición expuesta en estas cláusulas es la "matriz de la garantía de los derechos individuales ante la intervención injustificada del Estado con el ciudadano".[11] Esta protección se

---

[11] Pueblo v. Pérez Rivera, res. 26 de septiembre de 2012, 2012 T.S.P.R. 146, 186 D.P.R. ____ (2012); Pueblo v. Román Mártir, 169 D.P.R. 809, 821-22 (2007).

extiende a los procedimientos de investigación criminal sobre el sospechoso de la comisión de un delito.[12] En lo pertinente, nuestra Constitución dispone en esta sección que

> [n]o se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables…
>
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación…
>
> Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.[13]

Por consiguiente, se prohíbe, de ordinario "el arresto de personas o los registros o allanamientos sin una orden judicial previa, apoyada en una determinación de causa probable".[14] La orden judicial es necesaria para poder garantizar la dignidad e intimidad de las personas y sus efectos de posibles actuaciones arbitrarias del Estado.[15] Esta protección constitucional es de tal importancia que si un arresto se realiza sin orden judicial se presume inválido y le corresponde al

---

[12] _Pueblo v. Pérez Rivera_, supra. Véase, además, O.E. Resumil, _Práctica jurídica de Puerto Rico: Derecho procesal penal_, Tomo I, Equity Pub. Co., New Hampshire, 1990, pág. 26.

[13] Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, págs. 326-327.

[14] _Pueblo v. Serrano Reyes_, 176 D.P.R. 437, 443 (2009); _Pueblo v. Calderón Díaz_, 156 D.P.R. 549, 555 (2002).

[15] Íd.; Íd., pág. 556.

Ministerio    Público    rebatir    la    presunción    de irrazonabilidad.[16]

Ahora bien, el requerimiento constitucional de previa orden judicial no es absoluto, existen excepciones donde se ha reconocido la validez de un registro o arresto sin una orden.[17] La Asamblea Constituyente reconoció expresamente que la garantía aludida frente al arresto tiene su límite en la conducta criminal.[18] Así, hemos reconocido en la Regla 11 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, que un agente del orden público puede realizar un arresto sin previa orden judicial. Esta regla establece que un funcionario del orden público puede hacer un arresto sin la orden correspondiente: (a) cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia, (b) cuando la persona arrestada hubiese cometido un delito grave, aunque no en su presencia, y (c) cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave, independientemente de que dicho delito se hubiere cometido o no en realidad.

---

[16] _Pueblo v. Calderón Díaz_, supra; _Pueblo v. Serrano, Serra_, 148 D.P.R. 173 (1999); _Pueblo v. Blase Vázquez_, 148 D.P.R. 618 (1999); _Pueblo v. Colón Bernier_, 148 D.P.R. 135 (1999).

[17] _Pueblo v. Calderón Díaz_, supra; _Pueblo v. Serrano, Serra_, supra; _Pueblo v. Blase Vázquez_, supra; _Pueblo v. Colón Bernier_, supra.

[18] 4 Diario de Sesiones de la Convención Constituyente 2567-2568 (1952). Véase, además, _Pueblo v. Colón Bernier_, supra.

Para determinar si un funcionario tuvo motivos fundados para creer que la persona a ser arrestada ha cometido un delito en su presencia, la conducta del funcionario se juzgará a base de la apreciación que haría una persona prudente y razonable en esas circunstancias.[19] Por lo tanto, motivos fundados es el conocimiento y la información que posee una persona ordinaria y prudente que lo llevan a creer que el arrestado ha cometido el delito, independientemente de que luego se establezca o no la comisión del delito.[20] Siendo así, hemos expresado que motivos fundados es sinónimo de causa probable.[21]

En síntesis, para que un arresto sin orden judicial sea válido tiene que sustentarse en motivos fundados. Ahora, la exigencia de motivos fundados no impide que varios agentes del orden público actúen concertada y coordinadamente.[22] Esto se debe a que de otra forma sería imposible realizar el trabajo en equipo necesario para poder combatir la criminalidad.[23] Por ello, los motivos fundados del agente que inició el arresto o registro, pueden ser válidamente atribuidos al funcionario del orden

---

[19] Pueblo v. Calderón Díaz, supra; Pueblo v. Colón Bernier, supra; Pueblo v. González Rivera, 100 D.P.R. 651 (1972); Cepero Rivera v. Tribunal Superior, 93 D.P.R. 245 (1966).

[20] Pueblo v. Martínez Torres I, 120 D.P.R. 496 (1988); Pueblo v. González Rivera, supra; Pueblo v. Cabrera Cepeda, 92 D.P.R. 70 (1965).

[21] Pueblo v. Calderón Díaz, supra; Pueblo v. Martínez Torres I, supra; Pueblo v. Díaz Díaz, 106 D.P.R. 348 (1977).

[22] Pueblo v. Serrano Reyes, supra, pág. 444; Pueblo v. Martínez Torres I, supra, pág. 504.

[23] Pueblo v. Pérez Rivera, supra.

público a quien este se los transmitió primero.[24]  Ahora bien, hemos resuelto que "[e]l hecho [de] que un agente pueda actuar según una comunicación de otro policía sin tener motivos fundados no significa que el Ministerio Público queda relevado de su deber de presentar evidencia para establecer la legalidad del arresto".[25]  Lo importante y necesario **en la vista de supresión de evidencia** es que el Ministerio Público presente prueba para establecer los motivos fundados que tuvo el agente que originó la cadena de información que resultó en el arresto.[26]

## A. Solicitud de Supresión de Evidencia

Por su parte, la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, es el medio procesal que permite a una persona agraviada por un allanamiento o registro ilegal solicitar al tribunal la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro.  En lo pertinente, la Regla dispone lo siguiente:

> La persona agraviada por un allanamiento o registro ilegal podrá solicitar del tribunal al cual se refiere la Regla 233 la supresión de cualquier evidencia obtenida en virtud de tal allanamiento o registro, o la devolución de la propiedad, por cualquiera de los siguientes fundamentos:
>
> (a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.

---

[24] Pueblo v. Pérez Rivera, supra.

[25] Pueblo v. Serrano Reyes, supra, pág. 445; Pueblo v. Martínez Torres I, supra, pág. 506.

[26] Íd., pág. 444; Íd., pág. 504.

........

En la moción de supresión de evidencia se deberán exponer los hechos precisos o las razones específicas que sostengan el fundamento o fundamentos en que se basa la misma. El tribunal oirá prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud y celebrará una vista evidenciaria ante un magistrado distinto al que atenderá el juicio, cuando se trate de evidencia incautada mediando una orden judicial y la parte promovente demuestre que existe una controversia sustancial de hechos que haga necesario la celebración de la vista; en ausencia de tal demostración, el tribunal podrá adjudicar la moción sin vista previa utilizando como base los escritos presentados por las partes.

El tribunal vendrá obligado a celebrar una vista envidenciaria con antelación al juicio, y ante un magistrado distinto al que atenderá el juicio, cuando se trate de evidencia incautada sin previa orden judicial si en la solicitud la parte promovente aduce hechos o fundamentos que reflejan la ilegalidad o irrazonabilidad del registro, allanamiento o incautación. **El Ministerio Público vendrá obligado a refutar la presunción de ilegalidad del registro o incautación y le corresponderá establecer los elementos que sustentan la excepción correspondiente al requisito de orden judicial previa.**

De declararse con lugar la moción, la propiedad será devuelta, si no hubiere fundamento legal que lo impidiere, y **no será admisible en evidencia en ningún juicio o vista.** La moción se notificará al fiscal y se presentará cinco (5) días antes del juicio a menos que se demostrare la existencia de justa causa para no haberla presentado dentro de dicho término o que al acusado no le constaren los fundamentos para la supresión, o que la ilegalidad de la obtención de la evidencia surgiere de la prueba del fiscal.(Énfasis nuestro.)

En <u>Pueblo v. Rey Marrero</u>, 109 D.P.R. 739, 750-751 (1980), aclaramos que esta regla aplica a las situaciones en las que se solicita la supresión de una confesión o testimonio.

Esta Curia ha expresado que a la presunción dispuesta en la Regla 234 de Procedimiento Criminal, *supra*, le aplican las disposiciones de las Reglas 302 y 303 de Evidencia, 32 L.P.R.A. Ap. VI.[27] La Regla 303, en lo pertinente, dispone que

> [c]uando en una acción criminal la presunción perjudica a la persona acusada, tiene el efecto de permitir a la juzgadora o al juzgador inferir el hecho presumido si no se presenta evidencia alguna para refutarlo. Si de la prueba presentada surge duda razonable sobre el hecho presumido, la presunción queda derrotada. La presunción no tendrá efecto alguno de variar el peso de la prueba sobre los elementos del delito o de refutar una defensa de la persona acusada.
>
> **(A) Cuando beneficia a la persona acusada, la presunción tendrá el mismo efecto que lo establecido en la Regla 302.** (Énfasis nuestro.)
>
> ……

Por su parte la Regla 302 establece que

> [e]n una acción civil, **una presunción impone a la parte contra la cual se establece la presunción el peso de la prueba para demostrar la inexistencia del hecho presumido. Si la parte contra la cual se establece la presunción no ofrece evidencia para demostrar la inexistencia del hecho presumido, la juzgadora o el juzgador debe aceptar la existencia de tal hecho.** Si se presenta evidencia en apoyo de la determinación de la inexistencia de tal hecho, la parte que interesa rebatir la presunción debe persuadir a quien juzga de que es más probable la inexistencia que la existencia del hecho presumido. (Énfasis nuestro.)

Es norma establecida que dicha presunción se activa con la mera inexistencia de una orden judicial previa.

---

[27] <u>Pueblo v. Serrano Reyes</u>, supra, pág. 449.

Así, pues, una vez se demuestra la inexistencia de la orden, la irrazonabilidad de la actuación es automática.[28] En estos casos, el Ministerio Público debe rebatir la presunción de invalidez demostrando la existencia de alguna de las circunstancias excepcionales que justifican actuar sin una orden judicial previa.[29]

A tenor de lo anterior, al evaluar una solicitud de supresión de evidencia en la que se plantea que la confesión o evidencia obtenida fue a raíz de un arresto ilegal, el Ministerio Público viene obligado a demostrar la legalidad del arresto.[30] **Reiteradamente, esta Curia ha resuelto que la presunción de invalidez beneficia al acusado y obliga al Ministerio Público a presentar evidencia para demostrar la legalidad y razonabilidad de la actuación del Estado.[31] Así, pues, recae sobre el Estado el peso de la prueba para demostrar que los hechos particulares del caso justificaban la intervención policial.[32]** Esto quiere decir que en la vista evidenciaria para adjudicar la moción de supresión de evidencia, el Ministerio Público tiene la obligación de presentar prueba y persuadir sobre la razonabilidad del registro o el

---

[28] _Pueblo v. Blase Vázquez_, supra, pág. 632.

[29] Íd., pág. 631.

[30] _Pueblo v. Serrano Reyes_, supra, pág. 449.

[31] Íd., págs. 447-448; _Pueblo v. Blase Vázquez_, supra, pág. 631; _Pueblo v. Colón Bernier_, supra, pág. 148.

[32] _Pueblo v. Calderón Díaz_, supra, pág. 556; _Pueblo v. Blase Vázquez_, supra, pág. 632; _Pueblo v. Colón Bernier_, supra, pág. 141; _Pueblo v. Vázquez Méndez_, 117 D.P.R. 170, 177 (1986).

arresto.[33] **Por lo tanto, si el Ministerio Público tuvo la oportunidad de presentar prueba sobre los motivos fundados para arrestar y no lo hizo, la presunción de que el arresto fue ilegal permanece; "el arresto tiene que ser considerado ilícito, y la prueba obtenida mediante éste tiene que suprimirse".[34]** Permitir un arresto o registro de acuerdo con una orden de un policía, sin la intervención judicial y sin que luego un tribunal pueda oír prueba y pasar juicio sobre motivos fundados, abriría peligrosamente las puertas a registros ilegales irrazonables y arbitrarios.[35]

En Pueblo v. Serrano Reyes, 176 D.P.R. 437 (2009), analizamos el efecto procesal de la falta de presentación de prueba por parte del Estado en una vista de supresión de evidencia. En esa ocasión concluimos lo siguiente:

> No procede ordenar otra vista para adjudicar una moción de supresión de evidencia cuando ya el Ministerio Público ha tenido una oportunidad probatoria adecuada y no logró rebatir la presunción que operaba en su contra. A diferencia de las Reglas 6(c) y 24(c) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, la Regla 234, *supra*, no concede al fiscal una segunda vista cuando el resultado no le favorece. Distinto a las vistas de causa probable para arrestar o para acusar, la determinación de suprimir la evidencia bajo la Regla 234 no termina con el proceso criminal. Esta regla meramente confiere una oportunidad a la defensa de lograr que se suprima en el juicio la presentación de la evidencia obtenida ilegalmente que podría ser perjudicial al acusado. Lo único que se

---

[33] Véase Pueblo v. Serrano Reyes, supra, pág. 448, citando a E.L. Chiesa Aponte, Derecho Procesal Penal: Etapa Investigativa, San Juan, Pubs. J.T.S., 2006, Sec. 4.4(e)(ii), pág. 141.

[34] Pueblo v. Colón Bernier, supra, pág. 148.

[35] Pueblo v. Martínez Torres I, supra, pág. 508.

decide es la legalidad o razonabilidad del registro efectuado. *Pueblo v. Miranda Alvarado*, supra. El Ministerio Público puede proseguir su caso contra el acusado con otra prueba independiente y distinta a la suprimida. *Pueblo v. Rivera Rivera*, 117 D.P.R. 283 (1986).

Ahora bien, es necesario aclarar que no solo la evidencia que se obtenga durante un registro o un arresto ilegal será inadmisible, sino que toda la evidencia que se obtenga luego, como "fruto" de dicho registro o arresto, también será inadmisible en evidencia.

En el caso preciso de una confesión como fruto de un arresto ilegal, esta Curia ha expresado que el punto decisivo es la voluntariedad de la confesión y no la ilegalidad de la detención.[36] Sin embargo, "el solo hecho de que el ilegalmente arrestado confesara o hiciera declaraciones incriminatorias tras recibir las advertencias de *Miranda,* no cura el vicio inicial en el arresto y las admisiones son "fruto del árbol ponzoñoso".[37] Esto se debe a que, al igual que existe una distinción entre la Cuarta y la Quinta Enmienda de la Constitución de Estados Unidos (Quinta Enmienda),[38] también existe una distinción entre el Art. II, Sec. 11 de nuestra Constitución (Art. II, Sec. 11) sobre el derecho a la no autoincriminación y el Art. II, Sec. 10 que excluye la

---

[36] *Pueblo v. Valentín Santana*, 89 D.P.R. 288, 293 (1963); *Pueblo v. Fournier*, 77 D.P.R. 222, 256 (1954).

[37] Chiesa Aponte, *op. cit.*, pág. 130.

[38] Véase *Brown v. Illinois*, 422 U.S. 590, 601-602 (1975).

admisibilidad de prueba obtenida ilegalmente. Una confesión realizada luego de hacerse las advertencias legales podría ser admisible bajo el Art. II, Sec. 11, sin embargo, no serlo bajo el Art. II, Sec. 10 si la misma se realizó luego de un arresto ilegal, ya que los intereses que buscan proteger estas dos secciones son distintos.

Por un lado, el Art. II, Sec. 11 protege al ciudadano que enfrenta un interrogatorio como parte de una investigación criminal de contestar preguntas que lo pongan en riesgo de un procedimiento criminal.[39] La protección concedida en esta sección "tiene el propósito de evitar que se someta a un individuo al cruel "trilema" de tener que escoger entre decir la verdad y acusarse a sí mismo, mentir y ser hallado incurso en perjurio, o rehusarse a declarar y ser hallado incurso en desacato".[40]

Por otro lado, el Art. II, Sec. 10 pretende desalentar a los funcionarios del orden público de que violen la protección constitucional.[41] La regla de exclusión establecida en esta sección encarna tres propósitos: (1) disuadir y desalentar a los funcionarios del orden público de que violen la protección constitucional, (2) integridad judicial, ya que los tribunales no deben ser cómplices de actos de

---

[39] Pueblo v. Millán Pacheco, supra, pág. 608.

[40] Pueblo v. Sustache Torres, 168 D.P.R. 350, 354 (2006); Chiesa Aponte, op. cit., pág. 305. Véase, además, Murphy v. Waterfront Commission, 378 U.S. 52, 55 (1964).

[41] Toll y Sucn. Rivera Rojas v. Adorno Medina, 130 D.P.R. 352, 358 (1992).

desobediencia a la Constitución y admitir evidencia ilegalmente obtenida e, (3) impedir que el Gobierno se beneficie de sus propios actos ilícitos; de otra manera la ciudadanía perdería confianza en el Gobierno.[42]

Como podemos observar, los derechos establecidos en estas dos cláusulas de nuestra Constitución se crearon con el propósito de proteger a los ciudadanos de distintas conductas realizadas por los funcionarios del Estado. Cada cláusula protege al ciudadano de una conducta distinta. El derecho a la no autoincriminación protege al ciudadano de no ser obligado a decir nada en su contra, mientras que el Art. II, Sec. 10 protege al ciudadano de registros y allanamientos irrazonables por parte del Estado. Por lo tanto, no toda confesión hecha voluntariamente luego de un arresto ilegal será admisible en evidencia. Tenemos que velar porque se cumplan con todas las garantías constitucionales.

## B. **Brown v. Illinois**

No obstante, esto no significa que toda confesión hecha después de un arresto o registro ilegal será inadmisible.[43] El Tribunal Supremo de Estados Unidos en Brown v. Illinois, 422 U.S. 590 (1975), estableció los factores a considerar para determinar la admisibilidad de una confesión realizada luego de un arresto ilegal. La

---

[42] Toll y Sucn. Rivera Rojas v. Adorno Medina, supra, págs. 358-359; Chiesa Aponte, op. cit., págs. 112-113.

[43] Pueblo v. Rodríguez Rivera, 91 D.P.R. 456, 463 (1964).

norma antedicha ha sido reiterada por el Tribunal Supremo federal en Dunway v. New York, 442 U.S. 200 (1979), Taylor v. Alabama, 457 U.S. 687 (1982) y en Kaupp v. Texas, 538 U.S. 626 (2003).

En Brown v. Illinois, supra, se arrestó ilegalmente al imputado para propósitos investigativos relacionados con un asesinato. El imputado fue llevado al cuartel de la policía, se le hicieron las advertencias de *Miranda* y a menos de dos horas de su arresto prestó dos declaraciones incriminatorias. El Tribunal Supremo federal sostuvo que el mero hecho de impartir las advertencias legales no era suficiente para remediar una confesión producto de un arresto ilegal.[44] Para concluir lo anterior, el tribunal estableció una distinción entre el derecho a la no autoincriminación cobijado por la Quinta Enmienda de la Constitución de Estados Unidos y la Cuarta Enmienda que excluye la admisibilidad de prueba obtenida ilegalmente. Determinó que el hecho de que las declaraciones incriminatorias fueran admisibles bajo la Quinta Enmienda no las hace admisibles bajo la Cuarta Enmienda, ya que la regla de exclusión bajo la Cuarta Enmienda sirve a intereses y políticas públicas distintas a las que se protegen bajo la Quinta Enmienda.[45]

Por último, el tribunal resolvió que la controversia sobre la voluntariedad de la confesión debía ser evaluada

[44] Brown v. Illinois, supra, pág. 601.

[45] Íd., págs. 601-602.

caso a caso dependiendo de los hechos particulares.[46] Para hacer dicha evaluación el Tribunal Supremo federal estableció unos factores que deberán tomarse en consideración, aunque especificó que ninguno de estos será determinante por sí solo al momento en que se examine la admisibilidad de la prueba. Señaló el tribunal:

> No single fact is dispositive. The workings of the human mind are too complex, and the possibilities of misconduct too diverse, to permit protection of the Fourth Amendment to turn on such a talismanic test.[47]

**A estos efectos se considerará: (1) si se hicieron las advertencias legales, (2) el tiempo transcurrido entre el arresto ilegal y la confesión, (3) las causas interventoras y, (4) el propósito y flagrancia de la conducta ilegal de los funcionarios del Estado.[48]** Además, indicó que el Ministerio Público es el que tiene el peso de la prueba de demostrar la admisibilidad de la confesión.[49] Analicemos ahora cada uno de estos factores:

## 1. Advertencias legales

La norma expuesta en <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), establece las advertencias que se deben hacer antes de un interrogatorio policial. Estas advertencias, por ser medidas dirigidas a garantizar el

---

[46] <u>Brown v. Illinois</u>, supra, pág. 603.

[47] Íd.

[48] Íd., págs. 603-604; <u>Taylor v. Alabama</u>, 457 U.S. 687 (1982). Véase, además, Chiesa Aponte, <u>op. cit.</u>, pág. 325.

[49] <u>Brown v. Illinois</u>, supra, pág. 604.

derecho de un sospechoso contra la autoincriminación, constituyen las garantías mínimas que amparan a todo interrogado bajo custodia policial en los estados y en Puerto Rico.[50] Estas advertencias son: (1) tiene derecho a guardar silencio, (2) todo cuanto diga podrá y será usado en su contra, (3) tiene derecho a estar asistido por un abogado durante el interrogatorio y, (4) de no poder pagar un abogado el Estado le nombraría uno sin costo. Se ha establecido que los funcionarios del gobierno tienen que realizar las advertencias de *Miranda* cuando estos interrogan a un sospechoso mientras está bajo su custodia.[51] Hasta el presente, en Puerto Rico hemos seguido esta norma sin expandir su alcance ni rechazar las interpretaciones restrictivas del Tribunal Supremo de Estados Unidos.[52]

Como mencionáramos anteriormente, las advertencias legales por sí solas no son suficientes para admitir una confesión, cuando esa confesión se hizo luego de un arresto ilegal. Las advertencias de *Miranda* sí son un factor importante a considerar, pero no es el único factor que debe ser considerado.[53] Cuando los agentes del Estado le hacen las advertencias de *Miranda* a los imputados se cumple con la protección de la Quinta Enmienda y el Art.

---

[50] Pueblo v. Millán Pacheco, supra, pág. 609.

[51] Íd., pág. 610; Chiesa Aponte, op. cit., pág. 31.

[52] Íd.; Íd., pág. 54.

[53] Brown v. Illinois, supra, pág. 603.

II, Sec. 11, pero no son un disuasivo suficiente para proteger los derechos bajo la Cuarta Enmienda y el Art. II, Sec. 10. Como hemos señalado, los intereses de protección no son similares, la protección contra los registros y arrestos ilegales buscan disuadir a los funcionarios del orden público para que no violen la Constitución, proteger la integridad de los tribunales al no permitir utilización en los procesos judiciales de evidencia ilegalmente obtenida y evitar que el Estado se beneficie de sus propios actos ilegales.[54] Es por esto que cuando una confesión se produce luego de un arresto ilegal, la voluntariedad de esa confesión no puede ser el único factor a ser considerado. De lo contrario, se estarían fomentando arrestos ilegales, ya que con solo hacer las advertencias legales se estaría subsanando una actuación que viola la Constitución.

Por lo tanto, para determinar la admisibilidad de una confesión obtenida en violación a la Cuarta Enmienda y el Art. II, Sec. 10, no solo es importante corroborar la voluntariedad de la confesión y que se hayan realizado las advertencias legales, sino que también se tiene que evaluar si se protegieron los intereses de dichas cláusulas.[55]

---

[54] Chiesa Aponte, op. cit., pág. 285.

[55] J.G. Lewis, The Fourth Amendment and Tainted Confessions: Admissibility as a Policy Decision, 13 Hous. L. Rev. 753, 762 (1976).

## 2. Tiempo entre el arresto y la confesión

En Brown v. Illinois, supra, el Tribunal Supremo federal indicó que un factor a tomarse en consideración para determinar la admisibilidad de una confesión es el tiempo transcurrido entre el arresto y la confesión. Sin embargo, no se ha establecido un parámetro que nos indique cuál es el tiempo necesario que debe transcurrir entre el arresto y la confesión. El Tribunal Supremo de Estados Unidos ha resuelto distintos casos utilizando los criterios de Brown y en cada caso el tiempo transcurrido entre el arresto y la confesión ha sido distinto. Por ejemplo, en Brown v. Illinois, supra, y en Dunway v. New York, supra, transcurrió un periodo de aproximadamente dos horas entre el arresto y la confesión. Por otro lado, en Taylor v. Alabama, supra, transcurrió un periodo de seis horas. Sin embargo, en Kaupp v. Texas, supra, transcurrieron apenas quince minutos, y en todos estos casos el tribunal entendió que el tiempo transcurrido no fue suficiente y suprimió la confesión. Por otro lado, en Rawlings v. Kentucky, 448 U.S. 98 (1980), el tribunal se enfrentó ante una controversia en la cual entre el arresto y la admisión transcurrieron cuarenta y cinco minutos y, sin embargo, en ese caso resolvió que la admisión era admisible. Estas decisiones del Tribunal Supremo federal se deben a que, como muy bien indicó en Brown v. Illinois, supra, el análisis debe hacerse caso a caso a base de todos los factores.

## 3. Causa interventora

La causa interventora es un evento que ocurre luego del arresto ilegal pero antes de la confesión y tiene el efecto de interrumpir la cadena que existe entre ese arresto y la confesión.[56] Generalmente, son sucesos externos e independientes a la ilegalidad del arresto. Por ejemplo, una causa interventora podría ser el consultar con un abogado y en algunos casos podría ser una manifestación espontánea no en respuesta de un interrogatorio.[57] Además, como se reconoció en Wong Sun v. U.S., 371 U.S. 471 (1963), dar por terminada la detención ilegal antes de hacer una confesión es un factor que puede considerarse como una causa interventora. Ahora bien, según resolvió el tribunal en Brown, realizar las advertencias legales no es suficiente para romper la cadena entre el arresto y la confesión y, por lo tanto, no puede ser considerada como una causa interventora.[58] Al analizar este factor, lo importante es observar si los sucesos que ocurren entre el arresto y la confesión son suficientes e independientes para poder romper la cadena entre dicho arresto ilegal y la confesión que se produjo.

---

[56] Rawlings v. Kentucky, 448 U.S. 98, 108-109 (1980).

[57] 3 LaFave, Israel, King & Kerr, Criminal Procedure, sec. 9.4(a), pág. 443 (2007).

[58] Taylor v. Alabama, supra, pág. 691.

**4. Propósito y flagrancia de la conducta ilegal de los funcionarios del Estado al efectuar el arresto**

En esencia, este factor establece que para que la confesión o admisión obtenida ilegalmente pueda prevalecer como prueba sustantiva, de la evidencia presentada por el Ministerio Público debe surgir que la acción de los funcionarios que llevaron a cabo el arresto ilegal <u>no</u> iba dirigida a obtener la admisión o confesión producto de la intervención para la cual no tenían motivos fundados. Esto es, que la acción del Estado no fue un intento flagrante de beneficiarse injustamente de su acto ilegal.[59] Claro está, todo esto debe ser evaluado a la luz de las circunstancias y caso a caso.

Ahora bien, nótese que, contrario a los demás factores, este factor lo que requiere es **ausencia** de unas circunstancias. Así, al analizar este último factor para determinar si la confesión obtenida de un arresto ilegal es admisible en evidencia, la **ausencia** de propósito y flagrancia en la conducta ilegal del Estado al momento del arresto es lo que favorece la no supresión de la expresión incriminatoria. Como pudimos observar, cuando se analizan los otros factores, la **presencia** de ellos favorece la admisión en evidencia de dicha confesión. Por lo tanto, para que una confesión obtenida luego de un arresto ilegal sea admisible en evidencia debemos observar que se cumpla

---

[59] Véase <u>Brown v. Illinois</u>, supra; <u>Dunway v. New York</u>, supra; <u>Rawlings v. Kentucky</u>, supra; <u>Taylor v. Alabama</u>, supra; <u>Kaupp v. Texas</u>, 538 U.S. 626 (2003).

más de uno de los siguientes: presencia de un tiempo transcurrido entre el arresto ilegal y la confesión, presencia de causas interventoras y/o ausencia de propósito y flagrancia de la conducta de los funcionarios del Estado al efectuar el arresto.

Precisado lo anterior, es menester señalar que el Tribunal Supremo federal le ha dado mayor importancia al propósito y flagrancia de la conducta ilegal del Estado al efectuar el arresto,[60] debido a que este factor se encuentra directamente relacionado con la regla de exclusión de la Cuarta Enmienda de la Constitución de Estados Unidos y el Art. II, Sec. 10 de nuestra Constitución. No obstante, todos los factores tienen que ser considerados en conjunto. Como mencionáramos anteriormente, el tribunal en Brown v. Illinois, supra, estableció que "no single fact is dispositive".[61] Esto es, que para que una confesión obtenida luego de un arresto ilegal sea admisible en evidencia se tiene que cumplir más de un factor, ya que ninguno de los factores es determinante por sí solo.

### III

Examinemos, pues, la aplicación de los fundamentos antes expuestos al caso de autos.

---

[60] Brown v. Illinois, supra, pág. 604.

[61] Íd., pág. 603.

En el caso ante nuestra consideración, el peticionario presentó una moción de supresión de confesión bajo el fundamento de que dicha confesión fue producto de un arresto ilegal realizado sin orden judicial. El Ministerio Público se opuso a dicha solicitud argumentando que el peticionario no se encontraba bajo arresto y la confesión se obtuvo de manera legal. Sin embargo, del testimonio del agente Rodríguez Torres se desprende que en varias ocasiones los agentes de la Policía le indicaron que tenían a tres personas detenidas. Por otro lado, el peticionario se encontraba en un cubículo de la Comandancia bajo el interrogatorio de múltiples agentes. Esta Curia ha expresado que "una persona ha sido incautada sólo cuando a la luz de la totalidad de las circunstancias, el modelo de *una persona razonable hubiera pensado que no estaba en libertad de marcharse del lugar. Lo determinante es que la libertad del individuo haya sido efectivamente restringida*".[62] (Énfasis en el original.) Ante estas circunstancias, concluimos que el peticionario sí se encontraba arrestado.

Así las cosas, ante la moción del peticionario de que se suprima la confesión por ser producto de un arresto ilegal, se activó automáticamente la presunción de que el arresto se hizo irrazonablemente. Como reiteradamente hemos expresado, el Ministerio Público tenía el peso de la

---

[62] Véase Pueblo v. Pérez Rivera, supra; Pueblo v. Millán Pacheco, supra, pág. 622; Asoc. Ctrl. Acc. C. Maracaibo v. Cardona, 144 D.P.R. 1, 59-60 (1997); Pueblo v. Pacheco Báez, 130 D.P.R. 664, 669 (1992).

prueba para rebatir dicha presunción y demostrar que ese arresto fue legal. **Sin embargo, en la vista de supresión el Ministerio Público se limitó a presentar evidencia sobre cómo se obtuvo la confesión, mas no presentó evidencia sobre la existencia de motivos fundados para arrestar al peticionario Nieves Vives.** En la vista solo testificó el agente que tomó la confesión, por lo que no pudo testificar sobre el arresto impugnado. El Ministerio Público no podía descansar únicamente en el agente que tomó la confesión. Ello, porque a pesar de que la defensa solicitó la supresión de la confesión, no estaba impugnando en sí la confesión ni cómo se realizó la misma, sino el alegado hecho de que esta fue producto de un arresto ilegal; así surgía claramente de la moción presentada por la defensa.[63] Por lo tanto, el Ministerio Público tenía que probar en la vista que el arresto fue legal.

El Tribunal de Apelaciones erró al resolver que la detención "no fue caprichosa, irrazonable ni errada; sino por el contrario fue producto de un proceso lícito". ¿Cómo el foro apelativo llegó a esta conclusión cuando en la vista de supresión hubo ausencia total de prueba sobre cómo se llevó a cabo el arresto? Como mencionáramos anteriormente, el Ministerio Público no presentó evidencia de cómo se arrestó al peticionario ni de los motivos fundados que tuvieron para arrestar. De la confesión

---

[63] Apéndice de la Petición de *certiorari*, págs. 27-36.

realizada por el peticionario, luego de su arresto, surge que el peticionario estuvo con el occiso esa noche, pero ¿cómo la policía adquirió esta información, cómo encontró al peticionario, cómo se llevó a cabo el arresto, quién arrestó, dónde se arrestó, cuáles fueron los motivos fundados? No sabemos conforme a qué información se conocieron los hechos que dieron origen al arresto. Pudo ser por información recibida de un confidente de la Policía, por conocimiento personal, por información recibida de otro agente o por información brindada por algún testigo. **En la vista de supresión no se presentó evidencia que contestara ninguna de estas interrogantes.** El tribunal no tuvo la oportunidad de evaluar si hubo motivos fundados para arrestar. No hay duda de que el Ministerio Público no rebatió la presunción de ilegalidad del arresto del peticionario. Por lo tanto, concluimos que el arresto fue ilegal.

Ahora bien, aunque la regla general es que toda evidencia obtenida como producto de un arresto ilegal es inadmisible en evidencia, lo anterior no es causa automática para suprimir la confesión. Es decir, para determinar la admisibilidad de la confesión realizada por el peticionario Nieves Vives debemos analizar los factores establecidos por el Tribunal Supremo de Estados Unidos en Brown v. Illinois, supra, y que hoy adoptamos a nuestro ordenamiento jurídico. Veamos.

En primer lugar, no existe controversia sobre las advertencias legales. Durante la vista de supresión la defensa estipuló que las advertencias de *Miranda* se realizaron legalmente y el peticionario las entendió. Así las cosas, se protegió el derecho contra la no autoincriminación cobijado por el Art. II, Sec. 11 de nuestra Constitución y por la Quinta Enmienda de la Constitución de Estados Unidos. Por lo tanto, la confesión realizada por el peticionario es admisible bajo estas cláusulas.

Como mencionáramos anteriormente, cada factor no es determinante por sí solo, sino que tenemos que analizarlos todos para poder determinar si la confesión es admisible. Por lo tanto, es importante analizar en conjunto el tiempo transcurrido entre el arresto y la confesión y si existieron causas interventoras. Esto se debe a que en la medida que el tiempo entre el arresto y la confesión es menor, hay menos probabilidad de que existan causas interventoras. En el presente caso, el peticionario Nieves Vives fue arrestado entre las cinco y media y seis de la tarde. Media hora más tarde, a las seis y media, el agente Rodríguez Torres comenzó a interrogarlo. Dicho interrogatorio duró aproximadamente media hora, ya a las siete de la noche el peticionario había sido puesto en libertad. Como podemos observar, el tiempo transcurrido entre el arresto y la confesión fue aproximadamente de una hora. En este corto periodo de tiempo, el peticionario

fue arrestado, llevado a la Comandancia e interrogado en dos ocasiones. En este caso en particular, al no transcurrir una cantidad sustancial de tiempo que atenuara el arresto ilegal, este factor obra en contra de la admisibilidad de la confesión. Sin embargo, este solo hecho no es un factor decisivo –como señalamos, el Tribunal Supremo de Estados Unidos en Rawlings v. Kentucky, supra, admitió una confesión que se produjo en menos tiempo que en el presente caso. Por lo antes señalado, es importante analizar si dentro de ese tiempo transcurrido ocurrió alguna causa interventora suficiente para romper la cadena entre el arresto y la confesión.

Durante la vista de supresión, el Ministerio Público señaló las circunstancias en las cuales se encontraba el peticionario luego del arresto. Por ejemplo, el Ministerio Público señaló que el peticionario Nieves Vives no se encontraba esposado, nunca fue ingresado a una celda, estuvo en todo momento sentado en un cubículo de la Comandancia y ya había sido descartado como sospechoso del asesinato cuando el agente lo interrogó sobre el escalamiento. Estas circunstancias no pueden ser consideradas como causas interventoras, ya que no son suficientes para romper la cadena que existe entre el arresto ilegal y la confesión. Estos sucesos son parte de la cadena que se creó con el arresto y llevó a la confesión del peticionario. Cuando el peticionario realizó la confesión todavía se encontraba bajo arresto,

no tenía abogado y estaba sujeto a interrogatorio. Estos no son factores externos e independientes del arresto y, por lo tanto, concluimos que no existieron causas interventoras.

Por último, analizaremos la conducta de los oficiales en este caso. En el presente caso, no existe prueba sobre la conducta de los oficiales antes y durante el arresto. El Ministerio Público tenía el peso de la prueba de demostrar que el arresto se hizo de manera legal y se cumplieron con todas las disposiciones establecidas en nuestro ordenamiento jurídico. Debido a que el Ministerio Público no presentó evidencia que demostrara que los agentes actuaron de manera legal, permanece la presunción de que el arresto fue ilegal e irrazonable y, por lo tanto, los funcionarios incurrieron en conducta ilegal.

Como podemos observar, solamente el factor de las advertencias legales favorece al Ministerio Público y estas por sí solas no son un disuasivo para proteger los derechos del Art. II, Sec. 10 de nuestra Constitución. Al analizar los demás factores vemos que todos apuntan a la dirección opuesta. Ello, porque no transcurrió un tiempo sustancial entre el arresto y la confesión, no ocurrieron causas interventoras y el Ministerio Público no presentó evidencia que probara que los agentes que arrestaron actuaron de manera legal.

En vista de todo lo anterior, resolvemos que el arresto realizado al peticionario Nieves Vives fue ilegal. Además, adoptamos los factores establecidos en Brown v. Illinois, supra, para determinar la admisibilidad de una confesión realizada luego de un arresto ilegal y determinamos que la confesión realizada por el peticionario es inadmisible en evidencia.

**IV**

Por las razones antes expresadas, revocamos la sentencia del Tribunal de Apelaciones y resolvemos que la confesión del peticionario Nieves Vives es inadmisible en evidencia. Asimismo, ordenamos la devolución del expediente de autos al foro primario para que continúe con los procedimientos judiciales conforme a lo aquí resuelto.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

   Recurrido

       v.                  CC-2012-119    Certiorari

Christian Nieves Vives

   Peticionario

SENTENCIA

San Juan, Puerto Rico, a 21 de febrero de 2013.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, revocamos la sentencia del Tribunal de Apelaciones y resolvemos que la confesión del peticionario Christian Nieves Vives es inadmisible en evidencia. Asimismo, ordenamos la devolución del expediente de autos al foro primario para que continúe con los procedimientos judiciales conforme a lo aquí resuelto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton concurre con lo resuelto en la Opinión mayoritaria mediante la siguiente expresión: "Coincidimos en que procede suprimir la confesión en controversia. Sin embargo, creemos que dicha conclusión debe fundamentarse en el derecho vigente sin necesidad de adoptar y aplicar jurisprudencia federal. La Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, y la jurisprudencia que la interpreta establecen claramente que un arresto sin orden judicial se presume ilegal y que corresponde al Ministerio Público demostrar que el agente que realizó el arresto tenía motivos fundados para así proceder,

lo cual no sucedió en este caso. Consecuentemente, la presunción de que el arresto fue ilegal permanece y la prueba obtenida como fruto de dicho arresto tiene que suprimirse, incluyendo la confesión hecha por el acusado. Véase Pueblo v. Rey Marrero, 109 D.P.R. 739, 750-751 (1980). Así pues, a la luz de las circunstancias particulares de este caso, no era necesario adoptar y aplicar los criterios expuestos en Brown v. Illinois, 422 U.S. 590 (1975). Por ende, con el mayor respeto a los compañeros Jueces Asociados y compañeras Juezas Asociadas, entendemos que dichos pronunciamientos constituyen *obiter dicta*".

La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez concurren con el resultado y se unen a las expresiones del Juez Presidente señor Hernández Denton.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo