CC-97-348                    1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>    Demandante-Recurrido<br><br>    V.<br><br>JOSE ANTONIO COLON BERNIER<br><br>    Demandado-Peticionario | Certiorari<br><br>99TSPR58 |

Número del Caso: CC-97-348

Abogados de la Parte Peticionaria: WANDA T. CASTRO ALEMAN
DIVISION DE APELACIONES
SOCIEDAD PARA ASISTENCIA LEGAL

Abogados de la Parte Recurrida: LCDA. EDDA SERRANO BLASINI
SUBPROCURADORA GENERAL

LCDO. ANGEL M. RIVERA RIVERA
PROCURADOR GENERAL AUXILIAR

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de Carolina

Juez del Tribunal de Primera Instancia: Hon. Eliadis Orsini Zayas

Tribunal de circuito de Apelaciones: Circuito Regional VII Carolina y Fajardo

Juez Ponente: Panel

Panel Intergrado Por:  Pres. Juez Arbona Lago y los Jueces Negroni Cintron y Salas Soler

Fecha: 4/20/1999

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


El Pueblo de Puerto Rico

    Demandante-Recurrido

        vs.                                    CC-97-348        CERTIORARI

José Antonio Colón Bernier

    Demandado-Peticionario



Opinión del Tribunal emitida por el Juez Asociado señor FUSTER BERLINGERI.

San Juan, Puerto Rico, a 20 de abril de 1999.

Nos toca dilucidar si en las circunstancias particulares del caso de autos una sospecha de actividad delictiva constituyó "motivos fundados" para efectuar un arresto sin orden judicial previa.


I

El 5 de mayo de 1997, el peticionario José A. Colón Bernier fue acusado por su alegada violación del Artículo 168 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4274. Se le imputó poseer y retener una bicicleta a sabiendas de que ésta había sido obtenida ilícitamente.

Según el testimonio ofrecido por un agente de la policía en la vista preliminar, el 10 de abril de 1997 dicho agente recibió una información por

radioteléfono de que en determinada calle de la Urbanización Fair View se encontraban dos individuos "sospechosos", que no eran reconocidos como residentes de ese lugar. **Esa fue toda la información que se le comunicó al agente**.

El agente en cuestión se dirigió entonces al lugar referido y allí se encontró con dos personas. Uno cargaba una carretilla, y el otro conducía una bicicleta. El agente de la policía intervino con las dos personas y procedió a interrogarlas. Les preguntó que de dónde eran, y éstos le respondieron que "del Hoyo". Indagó entonces del peticionario que de dónde había sacado la bicicleta, a lo que éste únicamente contestó "que la había comprado por $40 dólares".[1]

El agente policiaco procedió entonces a arrestar a las dos personas, **"para investigación"**. Declaró que la bicicleta en cuestión **"se le pareció"** a una que había sido informada en su cuartel como hurtada en un anterior

---

[1] En la narración de los hechos que hace el Procurador General en su alegato ante nos, se relata que cuando el agente policíaco que intervino con el peticionario le preguntó a éste que de dónde había sacado la bicicleta, el peticionario le contestó que la había comprado por $40 dólares **"a un tecato"**. Sin embargo, éste alegato es el único documento del expediente de autos donde aparece tal versión de los hechos. **El foro apelativo NO menciona de modo alguno en su sentencia que se impugna ante nos que el peticionario hubiese afirmado que le había comprado la bicicleta "a un tecato"**. Más aun, en la moción de supresión de evidencia que tuvo el tribunal de instancia ante sí y que éste denegó, **tampoco** se relata que el peticionario compró la bicicleta **"a un tecato"**. Finalmente, en la narración de los hechos que aparece en los alegatos del peticionario ante nos, no se indica de modo alguno que el agente policíaco referido hubiese declarado que el peticionario admitió haber comprado la bicicleta **"a un tecato"**.

escalamiento, por lo que arrestó a las dos personas referidas para investigar el asunto.

Una vez llegó al cuartel, el agente llamó por teléfono a la persona que antes se había querellado de haber perdido una bicicleta en el escalamiento referido. Esta persona describió por teléfono la bicicleta hurtada, y tal descripción alegadamente coincidió con la de la bicicleta que conducía el peticionario al ser arrestado. El agente entonces citó al querellante referido para que acudiera al cuartel. Este compareció luego e identificó la bicicleta como la suya. Ante esta situación, se presentó denuncia contra el peticionario. Se celebró la correspondiente vista preliminar el 23 de abril de 1997.

Concluido el testimonio narrado antes, la defensa solicitó la supresión de la evidencia ocupada. Adujo que el arresto sin orden del peticionario había sido ilegal e irrazonable. El Tribunal de Primera Instancia, **sin siquiera escuchar al Ministerio Público** sobre el planteamiento de la defensa, **lo declaró sin lugar de plano**. Estimó que la comunicación recibida por el agente de la policía había sido "corroborada por las observaciones e intervenciones" de éste "al personarse al lugar de los hechos".

El peticionario recurrió entonces ante el Tribunal de Circuito de Apelaciones y planteó otra vez su alegación de que el arresto en cuestión violaba la Sección 10 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico. El foro apelativo denegó la expedición del

auto solicitado.  Mediante una breve Resolución, determinó que "la totalidad de las circunstancias dieron lugar a los motivos fundados requeridos por la Regla 11 de Procedimiento Criminal."

El peticionario acudió a nos oportunamente.  El 27 de junio de 1997, expedimos el Certiorari solicitado por éste, a fin de revisar la resolución del foro apelativo.  Pasamos a resolver, luego de considerar el correspondiente escrito del Procurador General.

II

Como se sabe, nuestra Constitución prohibe que de ordinario se pueda arrestar a alguna persona sin previa orden judicial fundada en una determinación de causa probable.[2]  Pueblo v. Martínez Torres, 120 D.P.R. 496 (1988);  Pueblo v. Vázquez Méndez, 117 D.P.R. 170 (1986); Pueblo v. González Rivera, 100 D.P.R. 651 (1972).  De este modo, se protege la dignidad de las personas, y se interpone la figura imparcial del Juez entre los funcionarios públicos y la ciudadanía para ofrecer una mayor garantía de

---

[2] En lo pertinente, la Sec. 10 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico dispone que:

"Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación describiendo particularmente el lugar a registrarse, y las personas a detenerse o los casos a ocuparse."

razonabilidad a la intrusión estatal. <u>E.L.A. v. Coca Cola Bott. Co.</u>, 115 D.P.R. 197, 207 (1984).

La protección que ofrece la Constitución contra el arresto irrazonable es tal que si un arresto se realiza sin orden judicial, éste se **presume inválido**, y compete al Ministerio Público rebatir la presunción de irrazonabilidad mediante la presentación de prueba sobre las circunstancias especiales que requirieron tal intervención por los agentes del orden público. <u>Pueblo v. Rivera Colón</u>, 128 D.P.R. 672, 681 (1991); <u>Pueblo v. Martínez Torres</u>, <u>supra</u>, a la pág. 502; <u>Pueblo v. Vázquez Méndez</u>, <u>supra</u>, a la pág. 174; <u>Pueblo v. Lebrón</u>, 108 D.P.R. 324, 329 (1979).

Claro está, el requerimiento constitucional de que la orden de arresto sea expedida por autoridad judicial no es absoluto. En la propia Asamblea Constituyente se reconoció expresamente que la garantía aludida frente al arresto tiene su límite en la conducta criminal. 4 Diario de Sesiones de la Asamblea Constituyente 2567-2568 (1951). Así, hemos reconocido que un agente del orden público puede realizar un arresto sin previa orden judicial cuando, como dispone la Regla 11 de Procedimiento Criminal, dicho agente tiene "motivos fundados" para creer que la persona arrestada ha cometido un delito grave o ha cometido un delito en su presencia. <u>Pueblo v. Corraliza Collazo</u>, 121 D.P.R. 244 (1988); <u>Pueblo v. Rivera Rivera</u>, 117 D.P.R. 283 (1986); <u>Pueblo v. Del Río</u>, 113 D.P.R. 684 (1982); <u>Pueblo v. Alcalá Fernández</u>, 109 D.P.R. 326 (1980). Se trata de "**situaciones**

**excepcionales**", que hemos "**definido estrechamente**", en las cuales la orden judicial no es indispensable. Pueblo v. Rivera Colón, supra, a la pág. 682.

En numerosos pronunciamientos anteriores, hemos definido en qué consisten esos "motivos fundados", que por excepción permiten el arresto sin orden judicial.  En esencia, hemos resuelto que tales motivos fundados existen **si se desprende de la totalidad de las circunstancias del caso en cuestión que una persona ordinaria y prudente poseería aquella información y conocimiento que la llevarían a creer que la persona arrestada ha cometido o va a cometer el delito en cuestión**.  Pueblo v. Ortiz Alvarado, opinión del 1 de febrero de 1994, 135 D.P.R. ___, 94 JTS 6;  Pueblo v. Ruiz Bosch, 127 D.P.R. 762 (1991);  Pueblo v. Alcalá Fernández, supra, a la pág. 331;  Pueblo v. González Rivera, 100 D.P.R. 651, 654-655 (1972);  Cepero Rivera v. Tribunal Superior, 93 D.P.R. 245 (1966);  Pueblo v. Cabrera Cepeda, 92 D.P.R. 70, 74 (1965).  Así, pues, existen tales motivos fundados cuando una persona porta un arma de fuego a la vista de un policía, Pueblo v. Corraliza Collazo, supra; cuando un agente del orden público observa que una persona dispara un revólver contra otros, Pueblo v. Rivera Rivera, supra;  cuando una persona voluntariamente hace admisiones inculpatorias sobre la comisión de un delito ante un agente del orden público, Pueblo v. Alcalá Fernández, supra; cuando al investigar un suceso una persona, sin haber sido provocada, utiliza fuerza y violencia contra el policía que

investiga, para impedir su labor, Cepero Rivera v. Tribunal Superior; cuando un agente del orden público observa una clara transacción de drogas, Pueblo v. Cabrera Cepeda, supra; cuando un policía, que ha recibido una confidencia advirtiéndole concretamente sobre el lugar y tiempo en que ha de cometerse un delito, al investigar dicha confidencia observa a la persona arrestada mientras estaba en el proceso de cometer un delito grave, Pueblo v. Díaz Díaz, 106 D.P.R. 348 (1977); y cuando un agente del orden público, que ha sido alertado sobre la transportación de un cargamento de droga ilícita, al investigar el asunto durante algunas horas, sucesivamente descubre el vehículo en que se transportó la droga, localiza cerca de éste a individuos que tienen signos que los relacionan con dicho vehículo, y al interrogarlos éstos responden de modo palpablemente falso, Pueblo v. Ruiz Bosch, supra.

Por otro lado, hemos identificado ocasiones en las cuales no existían motivos fundados para el arresto de una persona sin orden judicial previa, por lo que no procedía dicho arresto, a pesar de que dicha persona había incurrido en conducta sospechosa. Así pues, una persona a quien la policía ordena detenerse pero no lo hace y se marcha apresuradamente del lugar, no puede ser arrestada sin orden judicial sólo por esa conducta. Véase Pueblo v. Martínez Torres, supra, y Pueblo v. Ortiz Martínez, 116 D.P.R. 139, 144 (1985). De igual modo, el hecho de que la policía descubra un alambique ilícito en los predios de una finca

propiedad de una persona, no constituye motivos fundados que permita arrestar a esa persona sin una orden judicial previa. Pueblo v. Lebrón, 108 D.P.R. 324 (1979). También hemos declarado ilícito un arresto sin orden judicial de unas personas que guardaban marihuana en sus ropas mientras se encontraban pescando en un área de mar, efectuado por unos policías que realizaban una ronda preventiva en dicho lugar, precisamente porque no existían motivos fundados para ello. Pueblo v. Vázquez Méndez, supra. De igual modo, hemos declarado ilícito un arresto sin orden porque la investigación policial de una confidencia no reveló una actividad tan altamente sospechosa, como para corroborar suficientemente la confidencia y apuntar razonablemente a la comisión de un delito, Pueblo v. Ortiz Alvarado, supra. Y hemos declarado ilícito un arresto sin orden judicial de una persona que fue detenida como parte de un proceso policial investigativo, para tomarle una fotografía para fines de investigación, aunque esa persona coincidía con la descripción de ella ofrecida a la policía por varios testigos de un delito. Estimamos que el arresto sin orden en estas circunstancias no constituía motivos fundados. Pueblo v. Rey Marrero, 109 D.P.R. 739 (1980). Señalamos entonces lo siguiente en la pág. 748:

> "No podemos sancionar . . . que en su labor investigativa tenga mano libre la policía para detener a las personas en cualquier sitio en que se encuentren pacíficamente—-el hogar, la casa de un amigo, el sitio de trabajo, el colmado, una pizería—-y conducirlas a sus cuarteles, sin orden de arresto, con el solo propósito de tomarles fotografías con fines investigativos. Ello

> violaría la cláusula constitucional que prohibe se prive a una persona de su libertad sin el debido proceso de ley (Art. II, Sec. 7); la que reconoce el derecho a protección contra ataques abusivos a la honra, a la reputación y a la vida privada y familiar de las personas (Art. II, Sec. 8); la que prohibe arrestos y allanamientos, excepto por mandamiento judicial a base de una previa determinación de causa probable apoyada en juramento o afirmación (Art. II, Sec. 10); y la primerísima de las disposiciones de nuestra Carta de Derechos, relativa a la inviolabilidad de la dignidad del ser humano (Art. II, Sec. 1). Si esto se permitiese, en aras de la protección policíaca indudablemente necesaria, nos convertiríamos en un estado policial indudablemente repudiable."

Como puede observarse de la reseñada trayectoria jurisprudencial, para que existan motivos fundados para realizar un arresto sin orden judicial, deben existir circunstancias excepcionales que lo justifiquen. El agente del orden público que realiza tal arresto debe conocer o estar informado de **hechos concretos** que razonablemente apunten a la comisión de un delito. **Meras sospechas no bastan**. Pueblo v. Ortiz Alvarado, supra; Pueblo v. Ruiz Bosch, supra; Pueblo v. Rey Marrero, supra. Tales motivos fundados existen claramente cuando el agente del orden público personalmente observa una actuación que es delictiva. También existen tales motivos fundados, aunque el agente no haya presenciado la comisión del delito, si al evaluar todos los datos que éste posee sobre el asunto, incluyendo lo que el agente mismo haya atisbado, éste concluye razonablemente que lo más probable es que se ha cometido o se va a cometer un delito.

                                    III

A la luz de la normativa expuesta antes, es evidente que en la situación particular sometida a nuestra consideración, no existían motivos fundados para realizar el arresto del peticionario sin previa orden judicial.

En primer lugar, debe notarse que este caso no gira en torno a si hubo corroboración suficiente de una confidencia sobre actos criminales a cometerse, como sucedió en los casos antes citados de Pueblo v. Ortiz Alvarado, Pueblo v. Ruiz Bosch o Pueblo v. Díaz Díaz, supra. Aquí no se le informó al policía sobre un evento delictivo concreto que habría de ocurrir próximamente, como sucedió en dichos casos. La información que le llegó al agente vía radioteléfono se refería únicamente a la presencia en un área residencial de unos individuos supuestamente sospechosos. Se trataba de una comunicación carente de hechos particulares, viciada de vaguedad, que no relacionaba de modo alguno a los individuos aludidos con la comisión de algún delito. Sólo apuntaba, pues, a meras sospechas.

También debe notarse que al llegar al lugar indicado, el agente del orden público no presenció ninguna conducta que, **de por sí**, fuese de naturaleza delictiva. Las dos personas observadas se comportaban ordenadamente y no resistieron de modo alguno el breve interrogatorio a que fueron sometidos por el agente.

La decisión de dicho agente de arrestar a esas personas se fundó únicamente en la simple **conjetura** de éste de que la

bicicleta que conducía el peticionario podía haber sido hurtada. Conforme a lo declarado por el agente en la vista preliminar, éste no indicó de ningún modo que al momento de arrestar al peticionario había identificado la bicicleta que éste conducía como la misma que había sido hurtada. Ni siquiera mencionó seña o indicio alguno de dicha bicicleta que permitiera inferir que ésta era probablemente la misma que había sido hurtada. Más aun, **nada** indicó el agente que relacionase al peticionario con el hurto de la bicicleta en cuestión. La conjetura del agente, pues, no pasaba de ser **una mera sospecha**, como lo comprueba la propia admisión de éste, de que arrestó al peticionario sólo para **investigar** el asunto, cosa que procedió hacer una vez llegó al cuartel con el peticionario.

Es claro, pues, que el policía en el caso de autos, según lo declarado por él mismo, al momento de arrestar al peticionario no tenía información o conocía hechos suficientes que razonablemente apuntaran a la comisión de un delito. No existían motivos fundados para llevar a cabo el acto excepcional de arrestar a una persona sin orden judicial previa.

Debe notarse que las circunstancias particulares de este caso son muy distintas a las de Pueblo v. Ruiz Bosch, supra, en el cual se realizó válidamente un arresto sin orden de unos individuos que no eran residentes del vecindario donde éste se hizo, y que no habían desplegado conducta delictiva en presencia del agente del orden público

que los arrestó.   En Pueblo v. Ruiz Bosch, supra, la totalidad de las circunstancias apuntaban a la comisión de un delito por los arrestados.  Allí hubo una confidencia que fue corroborada sustancialmente;   además, los individuos tenían signos que los relacionaban con los medios utilizados para cometer el delito que se investigaba;   mas aun, a los individuos en cuestión el policía les hizo una serie de preguntas pertinentes, a las que éstos no sólo no pudieron responder satisfactoriamente sino que las contestaron de manera evidentemente falsa.  Los hechos de aquel caso y los de éste, pues, son claramente distinguibles.


IV

Como hemos señalado antes, la Policía de Puerto Rico, en protección de la ciudadanía en general, tiene la obligación de **investigar** toda llamada telefónica recibida o información brindada por dicha ciudadanía referente a posible actividad delictiva.  Pueblo v. Ortiz Martínez, supra, a la pág. 144.  Pero una cosa es la obligación de pesquisar a fondo toda querella sobre posible actividad delictiva, y otra muy distinta es intervenir con y privar de su libertad a una persona sin orden judicial previa, sólo a los fines de investigar una mera sospecha.  En nuestro sistema de vida, que garantiza a plenitud los derechos fundamentales de toda persona, tal intrusión estatal sólo es posible en casos excepcionales en los cuales haya clara justificación para ello.

En este caso, antes de realizar el arresto en cuestión, el agente de orden público pudo haber profundizado en su investigación para fundamentar con hechos concretos su sospecha. Por ejemplo, pudo haberse comunicado por radioteléfono con su cuartel para obtener una descripción precisa de la bicicleta hurtada y así tratar de corroborar si se trataba de la misma que conducía el peticionario. De igual modo, pudo haberle hecho más preguntas al peticionario para carearlo con lo de su supuesta compra de la bicicleta. Estas y otras medidas similares pudieron haber ampliado la información y conocimiento del agente, para darle mayor fundamentación a su decisión de arrestar al peticionario sin previa orden judicial. Tal tipo de arresto no puede utilizarse para completar investigaciones policiales superficiales. No es un instrumento para la investigación de meras sospechas. Véase, Pueblo v. Ortiz Díaz, 123 D.P.R. 865, 870 (1989) y Pueblo v. Fournier, 77 D.P.R. 222, 262 (1954).

V

Para concluir, debe advertirse que ni el Ministerio Público ni los foros de instancia y apelativo observaron una norma importante que rige en casos de arresto sin orden judicial como el de autos. Como señalamos antes, de modo reiterado hemos resuelto que en tales casos surge una **presunción de invalidez** del arresto y le corresponde al Ministerio Público demostrar que dicho arresto fue lícito y razonable. El Ministerio Público en tales casos viene

obligado a rebatir la presunción de invalidez mediante la presentación de prueba sobre las circunstancias especiales que justificaron tal intrusión estatal. De otro modo, el arresto tiene que ser considerado ilícito, y la prueba obtenida mediante éste tiene que suprimirse. Pueblo v. Rivera Colón, supra, Pueblo v. Martínez Torres, supra; Pueblo v. Vázquez Méndez, supra; Pueblo v. Lebrón, supra. Véase, además, Pueblo v. Narváez Cruz, 121 D.P.R. 429 (1988); y Pueblo v. Malavé González, 120 D.P.R. 470 (1988).

En el caso de autos, el foro de instancia **desestimó de plano** la moción de supresión de evidencia presentada por el peticionario, en la cual se planteaba que el arresto había sido sin previa orden judicial y sin que hubiesen motivos fundados para ello. Lo hizo sin siquiera escuchar al Ministerio Público. Erró al actuar de tal modo, como erró también el Tribunal de Circuito de Apelaciones al confirmar la decisión del foro de instancia.

En este caso, lo que procedía era que el foro de instancia celebrase una vista evidenciaria en la cual el fiscal acreditase los motivos fundados, si existían, para el arresto sin orden judicial. De haberse cumplido con este requisito procesal, posiblemente se hubiera evitado el tiempo y esfuerzo dedicado a las revisiones judiciales.

VI

Por todo lo antes expuesto, resolvemos que el arresto del peticionario sin previa orden judicial fue ilícito, por lo que procede la supresión de evidencia solicitada. Por

consiguiente, se dictará sentencia para revocar la resolución del foro apelativo de 23 de junio de 1997 y para conceder la moción de supresión de evidencia solicitada por el acusado peticionario.


                                        JAIME B. FUSTER BERLINGERI
                                               JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Demandante-Recurrido

       vs.               CC-97-348      CERTIORARI

José Antonio Colón Bernier

    Demandado-Peticionario

SENTENCIA

San Juan, Puerto Rico, a 20 de abril de 1999.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente sentencia, se revoca la resolución del foro apelativo de 23 de junio de 1997 y se concede la moción de supresión de evidencia solicitada por el acusado peticionario.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Negrón García disiente con opinión escrita. El Juez Asociado señor Corrada del Río disiente sin opinón.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

Demandante-recurrido

CC-97-348    Certiorari

v.

José Antonio Colón Bernier

Demandado-peticionario

Opinión Disidente del Juez Asociado señor Negrón García

San Juan, Puerto Rico, a 20 de abril de 1999

"La existencia de motivos fundados para el arresto sin orden de magistrado es **el resultado de una rápida evaluación de circunstancias,** en la cual el oficial de policía llega a la conclusión de que la persona ha cometido un delito en su presencia. Regla de Procedimiento Criminal 11(a). **Para así concluir, el agente debe relacionar el comportamiento de la persona frente a él, con los hábitos de conducta y manera de actuar de infractores de la ley en circunstancias similares. Esto requiere el conocimiento de usos y costumbres de los infractores con los cuales el policía está familiarizado, especialmente si se trata de delitos comunes de alta incidencia.** Cada delito tiene unas

características externas, una manera de realizarse, que lo proyectan visualmente, tipifican la circunstancia delictiva y dirigen el raciocinio hacia la concreción de motivos fundados para el arresto." Pueblo ex rel. E.P.P., 108 D.P.R. 99, 100 (1978) –énfasis suplido–.

Ante la fluidez situacional que tiene el trasfondo fáctico de este caso, la mayoría del Tribunal, realmente está requiriendo a la policía, **no la creencia razonable de que se ha cometido un delito grave, sino certeza de la comisión del delito**. Disentimos.

I

El concepto motivos fundados para arrestar es esencialmente **pragmático**. Se nutre y evalúa a la luz de las circunstancias específicas de cada caso. Pueblo v. Báez, 130 D.P.R. 664 (1992); Pueblo v. Ruiz Bosch, 127 D.P.R. 762 (1991); Pueblo v. Alcalá Fernández, 109 D.P.R. 326 (1980); Pueblo v. Lafontaine Alvarez, 98 D.P.R. 75 (1969). **No significa certeza matemática; menos determinación "más allá de duda razonable"**. Su razonabilidad es atendida en función de la variabilidad del comportamiento humano. "La conducta del funcionario público se juzga pues en orden al criterio de la persona prudente y razonable, por lo que es necesario considerar las circunstancias específicas del arresto para determinar su validez". Pueblo v. Alcalá Fernández, supra, 331–332; Pueblo v. Lafontaine Alvarez, supra, 81.

Advertimos, sin embargo, que por razón de su especial entrenamiento, tarea investigativa y misión preventiva –incluye naturalmente un ánimo alerta y prevenido–, al aplicar a la policía el modelo de "persona prudente y razonable", **no podemos situarlo como el más inocente de las personas**. Expongamos los hechos.

II

El 10 de abril de 1997, el agente Ramón Ortiz Cajigas fue informado de que dos individuos sospechosos se encontraban en la calle 15 de Fair View, Trujillo Alto. En el descargo de su responsabilidad, se dirigió al área y allí los observó, uno cargando una carretilla y el otro conduciendo una bicicleta. Se les acercó y preguntó de dónde eran;

éstos respondieron que eran del "Hoyo". Seguidamente les inquirió de dónde habían sacado la bicicleta, a lo que el acusado José A. Colón Bernier contestó que se la había comprado a un "tecato"[3] por $40.00. El agente Ortiz Cajigas afirmó que dicha bicicleta se le pareció a una que había sido previamente informada hurtada en un escalamiento por lo que procedió a poner bajo arresto a Colón Bernier y acompañante. Una vez en el cuartel, el agente se comunicó con el querellante del aludido escalamiento, quien acudió al cuartel e **identificó positivamente la bicicleta como suya**.

III

La certeza que la mayoría del Tribunal impone hoy para tener motivos fundados es totalmente ajena a la realidad del quehacer cotidiano policiaco: dicha determinación es producto de una creencia resultante de una rápida evaluación de circunstancias y factores. Pueblo ex rel. E.P.P., supra. En este caso, el oficial Ortiz Cajigas **creyó fundadamente** que la bicicleta que conducía Colón Bernier era la misma hurtada en un escalamiento anterior. Al preguntarle a Colón Bernier dónde la había obtenido, éste contestó que se la había comprado a un "tecato" por $40.00. Es de notar que en la querella previa presentada por el hurto, la bicicleta había sido valorada en $400.00. El precio irrisorio de la bicicleta, unido a su procedencia ("un tecato") ciertamente abonó a la creencia del agente, haciendo, a su vez, aún más razonable su intervención.

---

[3] En el incidente de la supresión no se desfiló prueba alguna, por lo cual en el trámite ante el Tribunal de Circuito de Apelaciones y este foro no se preparó ni elevó Exposición Narrativa de la Prueba. El foro de instancia, al igual que el Tribunal de Circuito de Apelaciones, en sus respectivas adjudicaciones, tomaron la reseña fáctica que en su argumentación el acusado Colón Bernier hizo en su Moción de Supresión. Por su parte, el Procurador General en su Informe adiciona el dato de que la compra fue a un "tecato".

Ante esta discrepancia, el curso apropiado e ideal hubiese sido pedir al acusado Colón Bernier que elevara una Exposición Narrativa de la Prueba.

En ausencia de la Exposición Narrativa de la Prueba, no vemos razón alguna por la cual tengamos que tomar como cierta **exclusivamente** la versión del acusado Colón Bernier.

De todos es conocida la norma jurisprudencial de que el valor irrisorio o depreciado pagado por artículos hurtados, es una circunstancia que puede ser utilizada para probar el conocimiento de su procedencia ilegal. <u>Pueblo</u> v. <u>Alvarez</u>, <u>supra</u>; <u>Pueblo</u> v. <u>Vélez Matos</u>, 90 D.P.R. 9 (1964); <u>Pueblo</u> v. <u>Pérez</u>, 43 D.P.R. 796 (1932); <u>Pueblo</u> v. <u>Garcés</u>, 36 D.P.R. 270 (1927). **De manera pues, que para una persona prudente y razonable, no sólo era razonable creer que Colón Bernier estaba en posesión de un bien apropiado ilegalmente, sino que lo hacía a sabiendas.**

En conclusión, la combinación de todos estos factores generaron en el agente motivos fundados suficientes para que el arresto Colón Bernier fuera uno legal, y el producto de dicho arresto admisible en evidencia.

**Una nota final.** Con el mayor respeto, la mayoría incurre en el error de adjudicar prematuramente los méritos. Precisamente no toma en cuenta la diferencia en el <u>quantum</u> de prueba requerido para la determinación de culpabilidad de un acusado hecha por un juez y la determinación de motivos fundados para el arresto de un agente del orden público. En su día, será necesario probar todos los elementos del delito más allá de duda razonable para concluir que Colón Bernier es culpable del delito de poseer bienes apropiados ilegalmente. Ahora bien, nos negamos a suscribir un razonamiento que en su sustrato exige al policía el criterio de "más allá de duda razonable", que propiamente pertenece a la etapa ulterior del juicio en su fondo, en el ambiente sosegado del tribunal.


ANTONIO S. NEGRÓN GARCÍA
Juez Asociado