Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Peticionaria<br><br>v.<br><br>LUIS NEGRÓN ACEVEDO<br><br>Recurrido | TA2026AP00241 | ***Apelación* acogida como *CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>D LA2025G0268<br>D SC2025G0210<br>D PD2025G0034<br>D BD2025M0020<br><br>Sobre:<br>Art. 15, Ley 8<br>Art. 6.05, Ley 168<br>Art. 404 A, Ley 4 |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 25 de marzo de 2026.

Comparece el Pueblo de Puerto Rico (en adelante, parte peticionaria y/o Ministerio Público) para solicitarnos la revisión de la *Resolución* emitida el 14 de enero de 2026 y notificada al día siguiente,[1] por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante la *Resolución* recurrida, el foro primario declaró *Ha Lugar* una solicitud de supresión de evidencia incoada por el señor Luis Negrón Acevedo (en adelante, señor Negrón Acevedo o recurrido.

Por los fundamentos que expondremos, se expide el auto de c*ertiorari,* y se revoca la *Resolución* recurrida.

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 1, Anejo 2.

I

Por hechos acaecidos el 23 de abril de 2025, se presentaron cuatro (4) denuncias en contra del señor Negrón Acevedo,[2] por presuntamente haber cometido los delitos siguientes: (i) poseer y transportar una tablilla a sabiendas de que fue obtenida mediante el delito de apropiación ilegal (Artículo 192 del Código Penal de Puerto Rico de 2012);[3] (ii) poseer, retener y disponer de un vehículo de motor a sabiendas y con conocimiento de que fue obtenido mediante el delito de apropiación ilegal (Artículo 15 de la Ley para la Protección de la Propiedad Vehicular);[4] (iii) portar y usar un arma, de fuego tipo revolver, para la cual no tenía permiso ni licencia conforme a la ley, con la intención de cometer el delito de robo (Artículo 6.05 de la Ley de Armas de Puerto Rico de 2020),[5] y (iv) poseer la sustancia de marihuana sin estar autorizado en ley (Artículo 404 de la Ley de Sustancias Controladas de Puerto Rico).[6]

No obstante, lo anterior, únicamente se determinó causa probable por infracciones al Artículo 404 de la Ley Núm. 4;[7] el Artículo 15 de la Ley Núm. 8, en su modalidad grave,[8] y el Artículo 6.05 de la Ley Núm. 168,[9] lo cual fue reiterado mediante vista preliminar, celebrada el 26 de agosto de 2025.[10]

Así las cosas, el 11 de diciembre de 2025, el recurrido presentó una *Moción de supresión de evidencia*.[11]. Acotó que el hecho de que el vehículo en el cual transitaba el señor Negrón Acevedo tenía una tablilla que no le pertenecía no justificaba un arresto sin orden judicial. Menos aún, cuando los agentes declararon que el señor Negrón Acevedo era pasajero del vehículo,

---

[2] SUMAC TA, a la Entrada Núm. 1, Anejo 5.
[3] Ley Núm. 146- 2012, 33 LPRA sec. 5262.
[4] Ley Núm. 8 de 5 de agosto de 1987, 9 LPRA sec. 3214.
[5] Ley Núm. 168- 2019, 25 LPRA sec. 466d.
[6] Ley Núm. 4 de 23 de junio de 1971, 24 LPRA sec. 2404.
[7] *Íd.*
[8] 9 LPRA sec. 3214.
[9] 25 LPRA sec. 466d.
[10] SUMAC TA, a la Entrada Núm. 1, Anejo 6.
[11] *Íd.*, Anejo 7.

no conductor, de modo que no era posible hacer una inferencia razonable de que este conocía que la referida tablilla no le pertenecía al vehículo. Puntualizó que del testimonio del Agente Jesús Alberto Gutiérrez Valle (Agente Gutiérrez Valle) se desprendió que este no investigó sobre el conocimiento del señor Negrón Acevedo sobre la tablilla, ni le realizó preguntas antes de arrestarlo. Por otro lado, subrayó que del testimonio del aludido agente también surgió que este inicialmente no vio el arma, ni sustancia contralada alguna, fue luego de arrestar al señor Negrón Acevedo, y mirar al interior del vehículo, que observó la marihuana. En consideración a lo anterior, arguyó que el arresto ilegal del señor Negrón Acevedo contaminó todas las ocupaciones anteriores, en otras palabras, que estas constituían fruto del árbol ponzoñoso. A tenor, solicitó que se suprimiera la evidencia ocupada.

En respuesta, el foro primario concedió término para que el Ministerio Público presentara su posición y señaló vista de supresión de evidencia para el 13 de enero de 2026.[12]

En cumplimiento con lo ordenado, el 13 de enero de 2026, el Ministerio Público presentó su *Oposición a moción de supresión de evidencia.*[13] Esencialmente, arguyó que el Artículo 16 de la Ley Núm. 8 permite inferir que el recurrido tenía conocimiento personal de que el vehículo había sido adquirido de forma ilícita si, entre otras cosas, la tablilla no correspondía a la unidad. De otra parte, planteó que los motivos fundados para intervenir con el señor Negrón Acevedo fueron transferidos por la Agente Samiritza Figueroa Colón (Agente Figueroa Colón), quien, mediante el monitoreo de cámaras del "Puerto Rico Regional Intelligence Operation Center", identificó que el vehículo de motor en cuestión tenía una tablilla que no le correspondía y que con el referido vehículo se había cometido un

---

[12] SUMAC TA, a la Entrada Núm. 1, Anejo 8.
[13] *Íd.,* Anejo 9.

asalto en horas de la mañana del día en el cual se intervino con el señor Negrón Acevedo. Respecto al arma ocupada, manifestó que del testimonio del Agente Gutiérrez Valle se desprendió que el señor Negrón Acevedo se resistió al arresto e intentó sacar el arma de fuego, por lo que no se podía decir que lo agentes carecían de motivos fundados para intervenir. Dado a lo anterior, peticionó que se declarara sin lugar la supresión de evidencia.

Luego, según pautado, el 13 de enero de 2026, se celebró la vista de supresión de evidencia. En la vista se presentó tanto evidencia testimonial como documental por parte del Ministerio Público. La prueba testifical consistió en los testimonios de los agentes: (i) José Otero Meléndez; (ii) Figueroa Colón, y (iii) Gutiérrez Valle.[14] Mientras que la prueba documental consistió en un exhibit intitulado *Ingreso y egreso de vehículos en sistema "Licence Plate Hunter"*.[15] Durante la vista se les concedió amplia oportunidad a las partes de interrogar y contrainterrogar a cada uno de los agentes.

Producto de la vista, el 14 de enero de 2026, notificada al día siguiente, el tribunal de instancia emitió la *Resolución* que nos ocupa.[16] En esta, resolvió que procedía la supresión de la evidencia solicitada por el señor Negrón Acevedo.

Como parte de este dictamen, que constituye el recurrido ante nos, el foro de instancia emitió sus determinaciones de hechos, las cuales consistieron en un resumen de los testimonios ofrecidos durante la vista, el cual incorporamos por referencia a este escrito.[17]

Por otro lado, el tribunal *a quo* concluyó que la intervención del señor Negrón Acevedo y el posterior arresto para la incautación de evidencia fue ilegal. Particularmente resaltó que de las observaciones realizadas por el Agente Gutiérrez Valle se desprendió

---

[14] SUMAC TA, a la Entrada Núm. 1, Anejo 2, pág. 1.
[15] *Íd.* Véase, además, SUMAC TA, a la Entrada Núm. 1, Anejo 11.
[16] SUMAC TA, a la Entrada Núm. 1, Anejo 2.
[17] *Íd.*, págs. 1-8.

que este no sabía quién había cometido el robo con el vehículo en cuestión y que presumió que los ocupantes eran las mismas personas que habían cometido el aludido delito. Asimismo, destacó que del aludido testimonio surgió que este agente tampoco había observado la presencia de armas o drogas hasta después del arresto. Sobre la presunción levantada por el Ministerio Público, expuso que las presunciones concluyentes que trasladan el peso de la prueba sobre un elemento del delito al acusado eran inconstitucionales. En consecuencia, entendió que no podía aplicarse la presunción levantada. Siendo así, el tribunal coligió que no hubo motivos fundados para arrestar al señor Negrón Acevedo. Menos aún, cuando este era el pasajero, por lo que no tenía la posesión inmediata del vehículo de motor intervenido.

En desacuerdo con el curso decisorio, el 30 de enero de 2026, el Ministerio Público presentó una *Moción en reconsideración,*[18] la cual fue declarada *No Ha Luga*r.[19]

Aún inconforme, el 5 de marzo de 2026, el Ministerio Público incoó el presente recurso, en el cual esgrimió los siguientes dos (2) señalamientos de error:

> El Tribunal de Primera Instancia erró y abusó de su discreción al suprimir la sustancia controlada ocupada, a pesar de que el Sr. Luis Negrón Acevedo no tenía una expectativa de intimidad en el vehículo hurtado, por lo que no se activó la protección constitucional contra registros y allanamientos bajo la Cuarta Enmienda de la Constitución de los Estados Unidos y el Artículo II, Sección 10, de la Constitución de Puerto Rico.

> El Tribunal de Primera Instancia erró y abusó de su discreción al disponer que los agentes carecían de motivos fundados para intervenir y suprimir la evidencia ocupada, a pesar de que, a la luz de la totalidad de las circunstancias, la intervención fue razonable y se configuró la excepción del registro incidental al arresto.

Mediante *Resolución* emitida el 6 de marzo de 2026, acogimos el recurso como uno de *certiorari,* por ser lo procedente en derecho y concedimos al recurrido hasta el 16 de marzo de 2026, para

---

[18] SUMAC TA, a la Entrada Núm. 1, Anejo 3.
[19] *Íd.,* Anejo 4.

expresarse en torno al recurso. El 20 de marzo de 2026, compareció el recurrido mediante *Oposición a la expedición de auto de certiorari.* Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

II

### A. La Expedición del Auto de *Certiorari* en Casos Criminales

Todo ciudadano tiene un derecho estatutario a que un tribunal de superior jerarquía revise los dictámenes emitidos por los tribunales de jerarquía inferior.[20] Este derecho viabiliza se mediante el recurso de *certiorari.*[21] A tenor, la parte afectada por alguna orden o resolución interlocutoria en un proceso criminal puede presentar el referido auto para solicitar la revisión de cualquier dictamen interlocutorio emitido por el foro primario.[22]

Establecido lo anterior, precisa señalar que la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime los criterios que este Tribunal deberá considerar para expedir un auto de *certiorari.* Estos son:

> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> F. Si la expedición del auto o de la orden de mostrar causa no causan–un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

---

[20] *Hernández Jiménez et al. v. AEE et al.*, 194 DPR 378, 382 (2015); *García Morales v. Mercado Rosario*, 190 DPR 632, 638 (2014).
[21] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[22] *Pueblo v. Román Feliciano*, 181 DPR 679, 690 (2011).

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[23]

Ahora bien, huelga acentuar que la discreción que tienen los foros apelativos para expedir un auto de *certiorari* no es irrestricta.[24] En otras palabras, "los jueces, so pretexto de ejercer su discreción, no pueden olvidarse de, ni relegar a un segundo plano, los mandatos y dictados de nuestra Constitución y los de las leyes, pertinentes a la cuestión en controversia".[25] Por ello, los criterios fijados por la antes señalada Regla 40, ayudan al tribunal revisor intermedio a ejercer prudentemente su discreción y decidir si atiende en los méritos el recurso.[26] De otra parte, conviene tener presente que los tribunales apelativos solo pueden sustituir el criterio del foro primario cuando existen circunstancias que prueben que este actuó con pasión, perjuicio o parcialidad, incurrió en craso abuso de discreción o error manifiesto.[27]

## B. La Supresión de Evidencia

En virtud de la Regla 234 de Procedimiento Criminal, cualquier persona agraviada por un registro ilegal podrá solicitar la supresión de la evidencia obtenida por alguno de los fundamentos siguientes:

(a) Que la propiedad fue ilegalmente ocupada sin orden de allanamiento o registro.

(b) Que la orden de allanamiento o registro es insuficiente de su propia faz.

(c) Que la propiedad ocupada o la persona o sitio registrado no corresponde a la descripción hecha en la orden de allanamiento o registro.

(d) Que no había causa probable para creer en la existencia de los fundamentos en que se basó la orden de allanamiento o registro.

---

[23] Regla 40 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025).

[24] *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

[25] *Pueblo v. Rivera Montalvo*, supra, a la pág. 372, citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 214 (1990). (Cita depurada).

[26] *Pueblo v. Rivera Montalvo*, supra, a la pág. 372.

[27] *Íd.*, a la pág. 373.

(e) Que la orden de allanamiento fue librada o cumplimentada ilegalmente.

(f) Que es insuficiente cualquier declaración jurada que sirvió de base a la expedición de la orden de allanamiento porque lo afirmado bajo juramento en la declaración es falso, total o parcialmente.[28]

Así, pues, vemos que la referida regla "provee un remedio efectivo para vindicar posibles violaciones al mandato constitucional contra registros y allanamientos irrazonables".[29] Ahora bien, la moción de supresión de evidencia, al amparo de esta regla, deberá expresar con especificidad los hechos en los que se basa y justifica la petición.[30]

Por otra parte, al presentarse la aludida moción, el tribunal deberá celebrar una vista evidenciara.[31] En la referida vista, "[e]l Ministerio Público vendrá obligado a refutar la presunción de ilegalidad del registro o incautación y le corresponderá establecer los elementos que sustentan la excepción correspondiente al requisito de orden judicial previa".[32] Esto, puesto a que, según adelantamos, todo registro realizado sin orden se presume irrazonable, de manera que la carga probatoria para demostrar la razonabilidad y legalidad de los mismos corresponde al Ministerio Público.[33]

En los casos en los cuales se determine que la evidencia incautada fue obtenida en violación al mandato constitucional, el tribunal procederá a suprimir la evidencia. De modo que "esta no podrá ser admisible en los tribunales como prueba sustantiva de la comisión de un delito".[34]

---

[28] 34 LPRA Ap. II, R. 234.
[29] *Pueblo v. Álvarez De Jesús*, 214 DPR 753, 767 (2024).
[30] *Íd.*
[31] *Pueblo v. Nieves Vives*, supra, a la pág. 15.
[32] *Íd.*
[33] *Pueblo v. Serrano Reyes,* 176 DPR 437, 447-448.
[34] *Pueblo v. Blase Vázquez*, 148 DPR 618, 628 (1999).

## C. El Arresto y el Registro Sin Orden

La Cuarta Enmienda de la Constitución de los Estados Unidos,[35] así como el Artículo II de nuestra Constitución,[36] establecen que todo ciudadano goza del derecho a la protección contra registros, incautaciones y allanamientos irrazonables que puedan afectar su persona, casas, papeles y efectos.[37] Dichas disposiciones tienen como propósito "proteger el derecho a la intimidad y dignidad del individuo, amparar sus documentos y pertenencias frente a actuaciones irrazonables del Estado, e interponer la figura del juez para ofrecer una mayor garantía de razonabilidad a la intervención con los ciudadanos."[38] Cabe destacar que, aunque ambas cláusulas constitucionales son similares, la cláusula contenida en nuestra Constitución dispone expresamente que la evidencia incautada sin una orden previa no podrá ser admitida en los tribunales.[39]

En mérito de lo anterior, la norma general exige que para efectuar un arresto o un registro se obtenga una orden judicial previa.[40] Consecuentemente, todo arresto o registro que se realice sin una orden se presume ilegal.[41] No obstante, el requerimiento constitucional de una orden judicial previa no es absoluto.[42] Existen instancias excepcionales en las cuales se ha reconocido la validez de un registro o arresto sin orden.[43] El Tribunal Supremo ha expresado que un agente del orden público puede llevar a cabo un registro sin la orden correspondiente en las siguientes circunstancias: (i) un

---

[35] Enmienda XIV, Const. EE. UU., LPRA, Tomo I.

[36] Artículo II, Sección 10, Const. ELA [Const. PR], LPRA, Tomo 1.

[37] *Íd.*

[38] *Pueblo v. Báez López*, 189 DPR 918, 927 (2013); *Pueblo v. Díaz, Bonano*, 176 DPR 601, 611–612 (2009); *Blassini et als. v. Depto. Rec. Naturales*, 176 DPR 454, 463–464 (2009); *Pueblo v. Martínez Torres*, 120 DPR 496, 500 (1988); *ELA v. Coca Cola Bott. Co.*, 115 DPR 197, 207 (1984).

[39] *Pueblo v. Báez López*, supra, a las págs. 927-928, citando a 3 Diario de Sesiones de la Convención Constituyente 1566 (1961); *Pueblo v. Rivera Colón*, 128 DPR 672, 681–682 (1991).

[40] *Pueblo v. Nieves Vives*, 188 DPR 1, 12-13 (2013).

[41] *Íd.*

[42] *Íd.*, a la pág. 13.

[43] *Íd.*

registro incidental a un arresto legal; (ii) un registro consentido voluntariamente de forma expresa o implícita; (iii) un registro en situación de emergencia; (iv) evidencia ocupada en el transcurso de una persecución; (v) evidencia a plena vista; (vi) cuando el agente del orden público obtiene conocimiento de la existencia del material delictivo por el olfato; (vii) evidencia arrojada o abandonada; (viii) un registro o allanamiento de una estructura abandonada; (ix) evidencia obtenida durante un registro administrativo; (x) un registro tipo inventario u (xi) evidencia obtenida en un lugar público —como un aeropuerto— como resultado del uso de canes para olfatear.[44]

Por su parte, la Regla 11 de Procedimiento Criminal establece que un funcionario del orden público puede efectuar un arresto sin orden en las circunstancias siguientes:

(a) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito en su presencia. En este caso deberá hacerse el arresto inmediatamente o dentro de un término razonable después de la comisión del delito. De lo contrario, el funcionario deberá solicitar que se expida una orden de arresto.

(b) Cuando la persona arrestada hubiese cometido un delito grave *(felony)*, aunque no en su presencia.

(c) Cuando tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave *(felony)*, independientemente de que dicho delito se hubiere cometido o no en realidad.[45]

Nuestro Alto Foro ha expresado que "los motivos fundados existen si se desprende de la totalidad de las circunstancias del caso en cuestión que una persona ordinaria y prudente poseería aquella información y conocimiento que la llevarían a creer que la persona arrestada ha cometido o va a cometer el delito en cuestión".[46] Así, pues, se ha expresado que los motivos fundados son sinónimo de causa probable.[47] Respecto a

---

[44] *Pueblo v. Báez López*, supra, a las págs. 930-931.
[45] 34 LPRA Ap. II, R. 11.
[46] *Pueblo v. Colón Bernier*, 148 DPR 135, 142 (1999).
[47] *Pueblo v. Nieves Vives,* supra, a la pág. 14.

este particular, se ha destacado que, al momento de determinar si existe causa probable, hay que hacerlo a base de criterio de razonabilidad.[48] Entiéndase que, las meras sospechas no bastan.[49] Ahora bien, no será necesario convencer al juez fuera de toda duda razonable de que se está violando la ley.[50] Se ha entendido que entre las circunstancias que constituyen motivos fundados podrían ser, entre otras, cuando al investigar un suceso una persona, sin haber sido provocada, utiliza fuerza y violencia contra el policía que investiga".[51]

Dicho lo anterior, conviene mencionar que dado a que los motivos fundados constituyen el mínimo de información que razonablemente podría convencer a un juez de que existe causa probable para expedir una orden de arresto, el agente que realice un arresto sin orden debe cumplir con las mismas exigencias.[52]

### D. Ley para la Protección de la Propiedad Vehicular

En lo pertinente al caso de marras, la Ley para la Protección Vehicular (Ley Núm. 8), esencialmente se promulgó a los fines de disponer mecanismos para la detención e investigación de la procedencia y titularidad de los vehículos de motor en determinadas circunstancias, así como para establecer penalidades.[53] A tales efectos, el Artículo 14 (2) de este cuerpo normativo faculta a los agentes del orden público a detener e inspeccionar y retener para investigación, por un periodo que no exceda de treinta (30) días calendario, cualquier vehículo o pieza cuando, entre otras cosas, la tablilla del vehículo no corresponda a la expedida por el Departamento de Transportación y Obras Públicas u otra autoridad competente.[54]

---

[48] *Pueblo v. Serrano, Serra*, 148 DPR 173, 185 (1999).
[49] *Íd.*
[50] *Íd.*
[51] *Pueblo v. Colón Bernier*, supra, a la pág. 142.
[52] *Pueblo v. Calderón Díaz,* 156 DPR 549, 559 (2002).
[53] Propósitos de la Ley Núm. 8, *supra,* 9 LPRA sec. 3201 nota *et seq.*
[54] Ley Núm. 8, *supra,* 9 LPRA sec. 3213.

Por su parte, el Artículo 15 establece que incurrirá en delito grave toda persona que posea algún vehículo de motor a sabiendas de que fue obtenido mediante apropiación ilegal, robo, extorsión o cualquier otra forma ilícita.[55]

### III

En el recurso ante nuestra consideración, el Ministerio Público, esencialmente, esgrime que el foro de instancia cometió el error de concluir que los agentes carecían de motivos fundados para intervenir con el recurrido del título, así como al suprimir la evidencia ocupada.

Según expusimos en nuestra previa exposición doctrinal, cuando se presenta ante nuestra consideración un recurso de *certiorari*, nuestro ordenamiento jurídico le confiere discreción a este foro apelativo para intervenir únicamente en aquellas determinaciones en las que el foro primario haya actuado de forma arbitraria, cometido un craso abuso de discreción, surja un error en la interpretación o cualquier norma procesal o de derecho sustantivo, así como cuando la determinación constituya una grave injusticia.[56] Con lo anterior en mente, nos dimos a la tarea de evaluar este recurso, incluyendo las posiciones de las partes, los documentos en apoyo, así como que, también, escuchamos la grabación de los procedimientos acaecidos durante la vista de supresión de evidencia, para determinar si estaban presentes las circunstancias para intervenir.

Luego de haber evaluado minuciosamente lo anterior, juzgamos que el tribunal de instancia incidió al suprimir la evidencia este caso.[57] Siendo así, procede expedir el presente auto de *certiorari* y revocar el dictamen objeto de revisión Abundamos.

---

[55] Ley Núm. 8, *supra*, 9 LPRA sec. 3214.
[56] *Pueblo v. Irizarry*, supra, a las págs. 788–789.
[57] *In re Aprob. Enmdas. Reglamento TA*, supra, a las págs. 59-60.

Como parte de la intervención inicial que culminó en el presente proceso criminal, se ocupó en el vehículo objeto de controversia una sustancia controlada, la cual arrojó positivo a marihuana. Asimismo, se ocupó un arma de fuego, tipo revolver, la cual se encontraba en posesión del recurrido. A tenor, se le imputó al recurrido, entre otros, el delito de portación y uso de un arma de fuego sin tener licencia o permiso conforme a la ley del Artículo 6.05 de la Ley Núm. 168,[58] así como el delito de posesión de sustancia controlada sin estar autorizado en ley del Artículo 404 (A) de la Ley Núm. 4.[59] Habiendo estado el recurrido transitando en un vehículo que poseía una tablilla que no le correspondía, se le imputó, también, la comisión de los delitos del Artículo 15 de la Ley Núm. 8,[60] en su modalidad grave, y del Artículo 192 del Código Penal de 2012.[61] Ahora bien, por el delito del Código Penal no se encontró causa, únicamente hubo causa probable para arresto por los primeros tres (3) delitos mencionados.

Así las cosas, el recurrido presentó una *Moción de Supresión de evidencia*, mediante la cual acotó, esencialmente, que el hecho de que el señor Negrón Acevedo transitaba en un vehículo que no le pertenecía no justificaba un arresto ni un registro sin orden.

Presentada la oposición del Ministerio Público a la supresión, así como celebrada la vista correspondiente, el tribunal *a quo* entendió que procedía suprimir la evidencia en este caso. Según adelantamos, no estamos de acuerdo.

Para entender mejor el razonamiento de esta Curia, dividiremos nuestra discusión, fundamentando individualmente las razones por las cuales juzgamos que no procedía la supresión de cada una de las piezas de evidencia ocupada.

---

[58] Ley de Armas de Puerto Rico de 2020, *supra*, 25 LPRA sec. 466d.
[59] Ley de Sustancias Controladas de Puerto Rico, *supra*, 24 LPRA sec. 2404.
[60] Ley para la Protección de la Propiedad Vehicular, *supra*, 9 LPRA sec. 3214.
[61] Ley Núm. 146, *supra*, 33 LPRA sec. 5262.

En lo pertinente, surge de la grabación de la vista, así como la *Resolución* recurrida, que el Agente Gutiérrez Valle intervino con el vehículo en el cual transitaba el recurrido, luego de que el Agente Rafael Matías Nieves (Agente Matías Nieves) le cursara información tanto a él como a su compañero, el Agente Luis Cáceres Bonilla, de que se había identificado un Kia Forte color gris con la tablilla INP-210, el cual estaba involucrado con un robo en Vega Baja y el cual tenía una tablilla hurtada. Asimismo, les indicó las dos (2) rutas por la cuales transitaba el vehículo de interés.

Conviene mencionar, que antes de que testificara el Agente Gutiérrez Valle, se desprendió de los testimonios previos, que luego de que la Policía de Puerto Rico acudiera a un puesto de verduras en Vega Baja, para investigar un presunto robo, surgió que la tablilla identificada en el vehículo de la persona que perpetuó el referido delito había sido hurtada y correspondía a un Toyota Yaris. Esta información se remitió al sistema *Licence Plate Hunter* para que la tablilla fuera identificada mediante el sistema de cámaras. Se especificó que la acción a tomar, cuando se realizara la intervención, era ocupar el vehículo para investigación y tomar la información de los ocupantes. En el testimonio de la Agente Figueroa Colón, esta explicó que el sistema de cámaras estaba instalado en postes fijos a través de toda la Isla. Así, pues, el referido sistema captura imágenes tiempo real, ofrece fotos de la tabilla y el vehículo, así como que indica hora, fecha y la cámara por donde transitaba el vehículo que ostenta la tablilla con interés. Igualmente, explicó que, cuando el sistema identifica la tablilla, ofrece unas alertas. Respecto al vehículo objeto de este caso, el sistema emitió cuatro alertas, siendo la última de la cámara ubicada en la Carretera #2.

Regresando al testimonio del Agente Gutiérrez Valle, según atestiguó, este le solicitó permiso al Agente Matías Nieves para acudir a la Carretera #2, la cual era una de las rutas en las cuales

se había identificado el vehículo en cuestión. Así las cosas, mientras se encontraba en el carril "SOLO" de Santa Rosa, cerca de la tienda IKEA, observó, en el carril a su derecha, un vehículo que coincidía con lo información brindada por el Agente Matías Nieves. En consideración a lo anterior, se le fueron detrás para corroborar el número de tablilla. Habiendo corroborado que la misma coincidía con la información dada, salieron del vehículo y se acercaron al Kia Forte gris. Allí, el Agente Gutiérrez Valle se acercó al pasajero y le requirió que se bajara, puesto a que el vehículo tenía una tablilla hurtada. En vista de que el recurrido se resistió, lo cual detallaremos más adelante, el referido agente se vio forzado a arrestarlo. Posteriormente, se procedió a registrar el interior del vehículo, en el cual, entre los dos (2) asientos, se encontró una bolsa plástica transparente con marihuana en su interior.

Es norma harta conocida que nuestra Constitución dispone expresamente que la evidencia incautada sin una orden previa no podrá ser admitida en los tribunales.[62] En consecuencia, todo registro que se realice sin una orden judicial previa se presume ilegal.[63] Ahora bien, sabido es que este requerimiento constitucional no es absoluto, de manera que hay ciertas instancias excepcionales en las cuales se ha reconocido la validez de un registro sin orden.[64]

Según expusimos en nuestra exposición doctrinal previa, la Ley para la Protección de la Propiedad Vehicular es clara en que cuando, tal como ocurrió en este caso, la tablilla de un vehículo no corresponda a la expedida por el Departamento de Transportación y Obras Públicas, los agentes del orden público tendrán facultad para detener e inspeccionar el vehículo en cuestión.[65] Siendo así,

---

[62] *Pueblo v. Báez López*, supra, a las págs. 927-928, citando a 3 Diario de Sesiones de la Convención Constituyente 1566 (1961); *Pueblo v. Rivera Colón*, supra, a las págs. 681–682.

[63] *Pueblo v. Nieves Vives*, supra, a la págs.12-13.

[64] *Íd.*, a la pág. 13.

[65] Articulo 14 (2) de la Ley Núm. 8, *supra*, 9 LPRA sec. 3213.

colegimos que, distinto al razonamiento del tribunal *a quo*, el registro del vehículo no fue uno incidental al arresto del recurrido, si no un registro en virtud de la Ley para la Protección de la Propiedad Vehicular, y perpetuado ante la información recibida de que el vehículo ostentaba una tablilla hurtada. A tenor, entendemos que la ocupación de la marihuana fue una válida, por lo que no procedía su supresión.

Establecido lo anterior, pasemos a discutir la procedencia de la ocupación del arma de fuego. Según se desprende de la grabación, el arresto del aquí recurrido se logró luego de que cuatro (4) agentes de la Unidad Motorizada de Bayamón lo agarraron y lo sometieron al arresto. De ahí, un tal sargento Abraham Sánchez observó un arma de fuego a uno (1) o dos (2) pies del detenido, la cual resultó ser un revolver Smith & Wesson calibre 357, con seis (6) municiones, y el número de serie mutilado. En consideración a lo anterior, entendemos que, a diferencia de la marihuana, la ocupación del arma sí fue una incidental al arresto del señor Negrón Acevedo. Así, pues, procede que evaluamos si el arresto del recurrido fue uno permitido por Ley, ya que, como bien se sabe, un arresto sin arresto orden judicial, se presume ilegal.

De entrada, es menester subrayar que la Regla 11 (c) de Procedimiento Criminal establece que un funcionario del orden público puede efectuar un arresto sin orden cuando, entre otras cosas, "tuviere motivos fundados para creer que la persona que va a ser arrestada ha cometido un delito grave *(felony)*, independientemente de que dicho delito se hubiere cometido o no en realidad".[66] Respecto a los motivos fundados, se ha entendido que "existen si se desprende de la totalidad de las circunstancias del caso en cuestión que una persona ordinaria y prudente poseería

---

[66] 34 LPRA Ap. II, R. 11.

aquella información y conocimiento que la llevarían a creer que la persona arrestada ha cometido o va a cometer el delito en cuestión".[67] Asimismo, se ha razonado que los motivos fundados son sinónimo de cosa juzgada[68]. De manera que el funcionario del orden público no tiene que estar convencido fuera de toda duda razonable que se está violando la ley.[69]

Según adelantamos, el Agente Gutiérrez Valle intervino con el vehículo en el cual transitaba el recurrido, tras recibir información de que se había identificado Kia Forte color gris con la tablilla INP-210, el cual estaba involucrado con un robo en Vega Baja y el cual tenía una tablilla hurtada. Una vez se corroboró que la tablilla del vehículo en cuestión coincidía con la información dada, procedieron a detenerlo. Cuando el Agente Gutiérrez Valle se acercó al recurrido, quien se encontraba en el lado del pasajero, y le requirió que se bajara, este se echó para atrás, se puso la mano izquierda con la palma sobre el muslo izquierdo, a la altura de la cintura. Así, pues, el agente procedió a abrir la puerta, y, aun así, este se negó a bajarse. Incluso, se resistió al punto que el agente tuvo que proceder a hacerle una maniobra de barrida de piernas para llevarlo al suelo. De ahí, llegaron otros cuatro (4) agentes, quienes lo agarraron y lo sometieron al arresto.

Conforme expusimos en nuestra exposición de derecho previa, entre las circunstancias que podrían constituir motivos fundados podría ser cuando al investigar un suceso una persona, sin haber sido provocada, utiliza fuerza y violencia contra el policía que investiga.[70] Siendo así, entendemos que la información recibida por el Agente Gutiérrez Valle, así como la actitud del aquí recurrido configuraron los motivos fundados suficientes para creer que este

---

[67] *Pueblo v. Colón Bernier*, supra, a la pág. 142.
[68] *Pueblo v. Nieves Vives,* supra, a la pág. 14.
[69] *Pueblo v. Serrano, Serra*, supra, a la pág. 185.
[70] *Pueblo v. Colón Bernier*, supra, a la pág. 142.

cometió el delito grave del Artículo 15 de la Ley Núm. 8. Es decir, la posesión de un vehículo de motor a sabiendas de que fue obtenido mediante apropiación ilegal, robo, extorsión o cualquier otra forma ilícita. A tenor, entendemos que, pese a que no existió una orden para arrestar al recurrido, el arresto se hizo conforme a los parámetros permitidos por Ley. De forma que no procedía suprimir el arma ocupada, ya que fue una incidental al arresto del recurrido. [71]

Por todo lo antes expuesto, juzgamos que los errores esgrimidos por el Ministerio Público se cometieron. Por lo cual, nos es forzoso expedir el presente recurso, para revocar la *Resolución* recurrida.

IV

Por los fundamentos que anteceden, se *expide* el auto de *certiorari*, y se *revoca* la *Resolución* recurrida.  Se devuelve el caso al foro inferior para la continuación de los procedimientos en armonía a lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[71] *Pueblo v. Báez López*, supra, a las págs. 930-931.